SUSAN STEPHENS v. H. C. HOUSE ET AL.

No. 3597.   Decided February 21, 1923.

(248 S. W., 30.)

**1.—Grant—Presumption from Acquiescence in Adverse Possession and Claim.**

Under the state of proof here considered it was error to submit to the jury as a question of fact, based on acquiescence of the heir to land in adverse possession and acts of ownership by others, the issue as to his presumed execution of a conveyance to such adverse claimants or their grantors. (pp. 466, 467).

**2.—Same—Knowledge—Possession by Cotenant.**

In the absence of any proof of knowledge by an heir of his rights in land or of the possession and acts of ownership therein by another, his acquiescence therein cannot be made the basis of a presumption of a grant by him when the possession, being that of his cotenant, was not necessarily hostile to him. Walker v. Caradine, 78 Texas, 292 Followed. House v. Stephens 198 S. W., 348, disapproved. (pp. 466, 467).

**3.—Same—Recitals in Deed.**

Recitals in a deed that the title held and interest conveyed was that of the grantors as heirs of O., would, it seems, disprove a claim by those holding under it of a presumptive deed to such grantors from an heir of O. not joining in the conveyance, based on his acquiesence in their adverse possession and acts of ownership. Moody v. Butler, 63 Texas, 212, followed. (pp. 467, 468).

**4.—Presumption of Deed—Adverse Claim—Acts of Ownership.**

Assertion of ownership, payment of taxes, etc., by a grantee of heirs to an interest in land, can not by made to relate back to the claim of such heirs, evidenced by no such acts of ownership, for the purpose of perfecting title in their favor by a presumption deed from a co-heir. (p. 469).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

The Supreme Court, having referred the questions to the Commission of Appeals, Section A, for their opinion thereon, here adopts such opinion as its answer.

*L. C. Kemp* and *Carothers & Brown,* for appellants.

It was error for the court to submit to the jury an issue of fact not raised by the evidence. Hermann v. Thomas, 141 S. W., 578; Walker v. Caradine, 78 Texas, 491; Lumber Co. v. Pinckard, 23 S

W., 720; Poland v. Porter, 98 S. W., 214; Taylor v. Watkins, 26 Texas, 690; Herndon v. Vick, 89 Texas, 471; Le Blanc v. Jackson, 210 S. W., 687.

For authorities stressing the importance of acquiescence in presuming a deed we cite: Walker v. Caradine, 78 Texas, 489; Baldwin v. Goldfrank, 88 Texas, 249; Magee v. Paul, 110 Texas, 70, 221 S. W., 254; Taylor v. Watkins, 26 Texas, 688; Le Blanc v. Jackson, 210 S. W., 687; Ricard v. Williams, 7 Wheat., 59, 5 L. Ed., 398.

This Court is limited to the conclusions of the Court of Civil Appeals as to the effect of the facts proven, and cannot examine into the record to ascertain the facts, but must decide the case upon the conclusion of facts certified to them by the Court of Civil Appeals. In support of this proposition we cite the following cases: Metropolitan Life Ins. Co. v. Lennox, 103 Texas, 133; Evans v. Daniel, 94 Texas, 281; Cleveland v. Carr, 90 Texas, 393; McManus v. Cash and Luckel, 101 Texas, 261.

In this case we have the issue of presumption of a deed submitted to the jury and the jury finding in favor of such presumption when there was no acquiescence by the appellant in the claim of the appellees, since we have the clear finding of the Court of Civil Appeals that appellants had no knowledge of their claim and hence there could be no acquiescence.

We respectfully contend that there is nothing in the deeds from John Owens and the others which would notify those claiming under Patrick Reels that the parties executing the deeds were claiming or attempting to convey any interest which was inconsistent with the continued ownership by the heirs of Patrick Reels of the interest he had inherited from his mother.

Under the facts heretofore discussed, and under the rules heretofore laid down governing such facts, we think there is no basis in the evidence for the presumption of the deed mentioned or any other deed. Houston Oil Co. v. McCarthy, 245 S. W., 656; Hermann v. Thomas, 141 S. W., 576; Poland v. Porter, 98 S. W., 214; Trinity Co. Lumber Co. v. Pinckard, 23 S. W., 724; Walker v. Caradine, 78 Texas, 491; Taylor v. Watkins, 26 Texas, 690; Le Blanc v. Jackson, 210 S. W., 687.

*Tharp & Tharp, Baker, Botts, Parker & Garwood, S. E. McHard, R. W. Houk,* and *A. R. & W. P. Hamblen,* for appellees.

The issue or presumption of a deed or conveyance from Patrick Reels was clearly made by the evidence, and it would have been error for that court to have refused to submit the issue. Grayson v. Lofland, 26 Texas Civ. App., 503, 52 S. W., 121; McCollum v. Buckner Orphans Home, 117 S. W., 886; Herndon v. Vick, 89 Texas, 469; Herndon v. Burnett, 21 Texas Civ. App., 25, 50 S. W., 581; Carlisle

v. Gibbs, 98 S. W., 192; Hirsch v. Patton, 108 S. W., 1015; Houston Oil Co. v. Kimball, 114 S. W., 662; Bounds v. Little, 75 Texas, 316; Brewer v. Cochran, 99 S. W., 1033; Surghenor v. Ducy, 139 S. W., 22; Surghenor v. Ayers, 139 S. W., 28; Masterson v. Harrington, 145 S. W., 626; Blunt v. Houston Oil Co., 146 S. W., 248; Fletcher v. Fuller, 120 U. S., 534; Van Gunden v. Virginia Coal Co., 52 Fed., 345; Arthur v. Ridge, 40 Texas Civ. App., 137, 89 S. W., 15; Morris v. Moore, 216 S. W., 890; Magee v. Paul, 110 Texas, 470, 221 S. W., 254; Chapman v. Dickerson, 223 S. W., 318; House v. Stephens, 198 S. W., 384; Taylor v. Watkins, 26 Texas, 690; Frugia v. Truehart, 106 S. W., 736; Blunt v. Houston Oil Co., 146 S. W., 248.

The decision of the Court of Civil Appeals for the Ninth Supreme Judicial District, upon the question of presumption of a deed, is the law of this case, binding alike on the parties, the court below and the Court of Civil Appeals. Clay v. Clay, 2nd Posey U. C., 365; Kempner v. Huddleston, 90 Texas, 182; Frankland v. Cassaday, 62 Texas, 418; M. K. & T. v. Redus, 118 S. W., 208; M. K. & T. v. Belew, 26 Texas Civ. App., 8, 62 S. W., 99.

Motion for rehearing, supported by an elaborate argument, was referred to the Commission of Appeals, Section A, and on recommendation of the majority, Judge Germany filing a dissenting opinion, was overruled by the Supreme Court.

*Andrew, Streetman, Logue & Mobley,* by permission, as amici curiae respresenting parties interested in the ruling, filed argument in support of the motion for rehearing.

MR. JUDGE RANDOLPH delivered the opinion of the Commission of Appeals, Section A.

The following statement and certified questions from the Court of Civil Appeals have been submitted to us for consideration:

"The appellant brought this suit against the appellees and a number of other defendants to recover an undivided one-sixth of a league of land granted by the Republic of Texas to Mary Owens, and lying partly in Harris and partly in Montgomery County.

The appellant deraigns title under Patrick Reels, who was a son of the original grantee, Mary Owens. The appellees claim title under the other children and grand-children of the original grantee.

At her death in 1837, Mary Owens left surviving her five children, viz: John Owens, William Owens, James Owens, Mary Owens and Patrick Reels, and five grand-children, viz: Emily Armstrong, Alexander Armstrong, William Morris, John Morris, and Sarah Ann Kilgore, who were children of Delilah Owens, a daughter of Mary Owens, who pre-deceased her mother.

There is no evidence that William or James Owens ever lived in

Texas. One of these sons is shown to have been living in Louisiana in 1853, and the residence of the other is not shown.

If neither of them were residents of Texas at the time of their mother's death, under the law then in force here neither inherited any interest in the land, and the resident heirs took title to all of it.

No claim to any interest in the land appears to have been made by either of these sons or their heirs.

On February 9, 1838, John Owens, purporting to act as administrator of his mother's estate, and also claiming to act for the heirs, entered into a contract with Burch and Caraher, whereby Burch and Caraher agreed to locate the league and labor to which Mary Owens was entitled, and have same surveyed and pay all expenses of obtaining the title, and John Owens obligated himself, and undertook to obligate the other heirs, to make a conveyance to them of one-fourth of the league and all of the labor whenever the title could be procured from the land office.

No conveyance was ever made by any of the heirs of Mary Owens to Burch and Caraher, and the only evidence tending to show that the contract to locate the land and pay all expenses necessary to obtain the title from the government was performed by Burch and Caraher is a pencil memorandum on the surveyor's record in Harris County stating that the field notes of the survey were delivered to Burch and that fees of $5.00 were paid by him, and the fact that after the death of both the administrator of each inventoried, as belonging to the estate of the decedent, an undivided one-eight of the Mary Owens survey. The Burch claim was sold by his administrator for $30.00, and Caraher's claim was sold in 1854 for twenty-five cents per acre.

There is no evidence that the contract made by John Owens, as administrator and agent of the other heirs of Mary Owens, was authorized or approved by the probate court in which the administration was had, or was ratified by the other heirs, or that they had any knowledge of such contract.

The patent to the league and a labor of land was issued to the heirs of Mary Owens October 10, 1845, and the fees of $65.00 for obtaining the title were paid by John Owens.

Patrick Reels and John Owens "as curators" for Mary Owens, deceased, appeared before the Board of Land Commissioners of Harrisburg County on January 4, 1838, and made the affidavits necessary to obtain the certificate upon which the land was located.

Patrick Reels lived in Colorado County and died there prior to November 29, 1848, on which date Travis Miller was appointed administrator of his estate. The inventory of the estate of Patrick Reels filed by Travis Miller does not include any land in the Mary Owens survey, and it is not shown that Patrick Reels ever paid any taxes or exercised any acts of ownership over this land. He was

married in 1837, his wife pre-deceased him, and he left as his surviving heirs four sons, James, George, Joseph and John, the oldest of whom could not have been more than ten years of age. After the death of their father, these children were separated and none of them lived to be grown. George died when he was twelve or thirteen years of age, Joseph when he was between eight and twelve years of age, John when a mere infant, and James, the last survivor, in 1854 or 1855. On the death of James any interest that Patrick Reels had in the Mary Owens survey at the time of her death passed to Diana Miller, a half-sister of James. Diana married Henry Obenhaus about 1856 and shortly thereafter she lost her mind as the result of a blow on the head. She died in 1879, leaving as her only heir a son, Jacob Miller, who was married to appellant in 1865. He died in 1894, leaving several children. Appellant thereafter married James Stephens, who is now dead. All of the children of Jacob Miller and appellant have conveyed to her all of their interest in the land in controversy.

On May 26, 1852, John Owens, Alexander Armstrong, Emily Robinson and Mary White (formerly Mary Owens), joined by her husband, Henry White, conveyed to W. R. Baker the following described land:

'One labor of land granted to Mary Owens and the undivided one-fourth of one league of land granted to the heirs of Mary Owens lying on the N. side of the San Jacinto river and bounded Massie on the W. and Votaw on the E. for a more full description reference is made to the patent of the same.'

The deed recites that the grantors are heirs of Mary Owens.

On the same day John Owens, Alexander Armstrong and Emily Robinson conveyed to J. D. Waters an undivided one-fourth of the Mary Owens league. This deed recites that the grantors are heirs of Mary Owens and describes the land conveyed as follows:—

'An undivided interest in one league of land granted to the heirs of Mary Owens of eleven hundred and seven acres, being the undivided one-fourth part thereof, being the balance due the parties of the first part as heirs of said Mary Owens, after having given one-fourth of said league to W. R. Baker, deed heretofore made.'

On February 10, 1853, Mary and Henry White conveyed to W. R. Baker a portion of the Mary Owens league described as:

'All the right and title of the parties of the first part in and to a league of land granted to Mary Owens, lying on the northeast side of the W. San Jacinto river, they being entitled to 1/4 share of the estate of Mary Owens as heirs and they having heretofore conveyed an undivided fourth of their share of said land to W. R. Baker do now convey the balance of their interest amounting to 815 acres now transferred. Also the share owned by ——— Owens who lives in Louisiana, a brother of the said Mary White.'

In 1849 W. R. Baker purchased the claim of the Burch estate to an undivided one-eighth of the league.

In 1854 Ann Earle purchased from the Caraher estate an undivided one-eighth of the league.

It should have been before stated, that the administration of the estate of Patrick Reels was closed in 1850. The order of the probate court closing the administration and discharging the administer recites that there was no property for distribution among the heirs.

After the deed to Waters, before mentioned, he rendered 1107 acres of the Mary Owens league for taxes for many of the years prior to 1874, when he sold to Willard Richardson.

On September 1, 1856, W. R. Baker sold 2435 acres of the Mary Owens league to Jacob Sharp.

In 1860 Sharp sold this 2435 acres to Wilson Brothers.

Baker began to render this land for taxes shortly after his purchase from the Owens' heirs, and it was generally rendered by or assessed in the name of its subsequent owners.

By a deed of partition executed on March 23, 1880, by T. H. Wilson, John E. Wilson, J. F. Wilson, W. R. Baker, Louisa B. Richardson and Ann Earle all of the Mary Owens league was partitioned and conveyed. By this deed one-fourth of the league, 1107 acres, described by metes and bounds, off the south end of the league, was set aside and conveyed to Louisiana B. Richardson. A tract of 336 acres adjoining the Richardson tract was set aside and conveyed to W. R. Baker. Wilson Brothers were given a tract of 2435 acres, and the balance of the survey was set aside and conveyed to Ann Earle. A year or two prior to this deed of partition several saw mills had been established on and near the Mary Owens survey, and timber from the survey was sold to these mills by the parties to the deed above mentioned before the execution of the deed, and the proceeds of such sales divided between the grantors in the proportion of the interest claimed by them in the survey in their subsequent deed of partition. After the execution of this partition deed a number of sales of land on the survey were made by the respective parties to said deed, and they and those holding under them have continued from that time to claim all of the survey and have exercised every act of ownership thereof.

The plaintiff knew nothing of the Owens league and never knew that her first husband, Jacob Miller, ever owned any interest therein until shortly before this suit was brought. Jacob Miller lived and died in Colorado County, and there is no evidence from which it can be reasonably inferred that he ever knew anything about the Mary Owens survey, or had any idea that he owned any interest therein through inheritance under Patrick Reels. Nor is there any evidence tending to show that the children of Jacob Miller had any knowledge of their interest in the survey until they conveyed to their mother, plaintiff herein, a short time before this suit was filed.

The case was submitted to a jury in the trial court upon special issues. Issues Nos. 13 and 14 were as follows:

'Special Issue No. XIII.

Did or did not Patrick Reels make a transfer or execute a deed of conveyance of his interest, if any, in the land in controversy, or the certificate by which it was located, to any one or more of the following persons, to-wit: John Owens, Mary White, Alexander Armstrong, Emily Robinson and W. R. Baker?'

Answer according as you find the facts to be.

'Special Issue No. XIV.

If you have answered Special Issue No. XIII in the affirmative, and only in that event, then you will answer this question:

Who were the persons or person to whom this transfer or conveyance or deed was executed?

Answer as you find the facts to be.'

To Special Issue No. 13 the jury answered, 'Yes,' and to No. 14 they answered, 'John Owens, Alexander Armstrong, Emily Robinson, Mary White (Henry White).'

Appellant assails the action of the court in submitting these questions and the answers of the jury thereto on the ground that the evidence does not raise such issues, and the findings of the jury are not supported by any evidence.

In the opinion of this court these assignments should be sustained. As we understand the decisions of our Supreme Court a grant will not be presumed from the long possession and use of land unless the evidence in the particular case is sufficient to raise the reasonable inference that the person or persons from whom the grant is claimed knew of and acquiesced in the adverse claim and use of the land. The acquiescence of the apparent owner in the adverse claim and acts of ownership is the strongest circumstance in support of the presumption or inference of a grant from such owner, and unless the evidence is such that such acquiescence can be reasonably inferred no grant can be presumed. There can be no acquiescence without knowledge. No one can be held to have acquiesced in a situation or claim of which he was ignorant.

We think the evidence in this case not only fails to raise the issue of acquiescence, but overwhelmingly, if not conclusively, negatives any acquiescence by Patrick Reels, or any of those to whom his title descended, in the adverse claim and use of the land. We do not feel at liberty, however, to reverse the judgment of the trial court upon this ground, because on a former appeal of this cause the Court of Civil Appeals for the Ninth District, in reversing the judgment of the trial court upon another ground, held that the evidence, which was the same on that trial as on the one from which this appeal is prosecuted, raised the issue of a presumption of a grant, and that

such issue should have been submitted to the jury. House v. Stephens, 198 S. W., 384.

Under the rule announced in the case of Railway Company v. Bellew, 62 S. W., 99, while the decision of the Court of Appeals for the Ninth District is not res adjudicata of the question, the only proper course for this court to now take is to follow that decision or to certify the question for your decision. Being unable to agree with the decision of this question on the former appeal, we feel constrained to certify the question to your court.

Upon the facts before stated, we respectfully submit for your determination the following questions:

First. Do the facts stated raise the issue of a grant from Patrick Reels to any of the persons found by the jury to have received such grant?

Second. Do the facts stated raise the issue of a grant from Patrick Reels, or any of those to whom his title descended, to any of the persons found by the jury to have received such grant, or to any of appellees' predecessors in title?"

A presumption of the execution of a deed from long and notorious claim of ownership, non-claim by the ostensible owner, and acquiescence in the claim of the adverse party, is a question of fact for the jury, but conditions surrounding the claim must be considered in arriving at the question as to whether or not the issue should be submitted to the jury. In the case of Walker v. Caradine, 78 Texas, 492, 15 S. W., 32, the rule is laid down governing such presumptions as follows:

"The presumption of a grant which arises from the long continued possession and use of real property is a presumption of fact, and can only have a controlling effect upon the title when all the circumstances in proof are consistent with the existence of a conveyance. Taylor v. Watkins, 26 Texas, 688.

It is not arbitrarily indulged in favor of long adverse possession merely, but should only be given effect when the circumstances in proof in the particular case are sufficient to induce the belief that a legal conveyance under which the possession has been taken and held has been in fact made."

John Owens, et al., who conveyed the land in controversy to W. R. Baker, and in whom it is insisted that the title of Patrick Reels was vested by presumption of conveyance from him, were co-heirs of Mary Owens with Patrick Reels. As it has been held by our Supreme Court that possession is not indispensable to the indulgence of such presumption, the claim of John Owens, et al., is placed on the same footing as though they were in possession at the time of the conveyance to W. R. Baker. If this is correct, they being tenants in common with Patrick Reels, such possession or claim was in har-

mony with Reels' claim and could not be used as a basis for such adverse possession or assertion of antagonistic claim as would raise the presumption of the execution of a deed by Reels to them. Bullard v. Barksdale, 11 Iredell (33 N. C.), 464; Ricard v. Williams, 7 Wheat., 59, 5 L. Ed., 398; Moody v. Butler, 63 Texas, 213.

In the case of Le Blanc v.| Jackson, 210 S. W., 691, Judge Montgomery, speaking for the Commission of Appeals, says:

"We have found no case in this State where the presumption of the execution of a deed from one tenant in common to another has been indulged. Doubtless a case might occur in which such presumption would be authorized. The existence of the relationship of tenants in common robs the possession and use of the property by one of them of all probative force as against the other joint owners. The possession is lawful, and from it alone no inference of adverse claim arises, and therefore no inference of title as against the other joint owners.

"These principles have been announced in numerous cases in Texas where title was asserted by limitation by one tenant in common as against the other tenants in common, and it is equally applicable where the presumption of a deed is sought to be proved by such possession and use. The Supreme Court of West Virginia, in a case involving this question said:

"There can be no adverse claim or title, unless there is actual ouster and notice or knowledge of hostile claim brought home to the other party. Mere silent possession by one, no matter how long continued, does not destroy the right of another, unless there be ouster, or adverse claim with notice to the other of adverse claim. Justice v. Lawson, 46 W. Va., 163, 33 S. E., 102; Cochran v. Cochran, 55 W. Va., 178, 46 S. E., 924; Cooley v. Porter, 22 W. Va., 121; Boggess v. Meredith, 16 W. Va. 1.

" 'Where the possession of one is entirely consistent with title in another it cannot give rise to a presumption of a conveyance from the latter.' 22 Am. & Eng. Encyc. of Law (2d Ed.), 1290.

" 'Ricard v. Williams, 7 Wheat., 59, 5 L. Ed., 598, says that this presumption can never arise 'where all the circumstances are perfectly consistent with the non-existence of a grant.' As the possession of one joint tenant is consistent with that of another—is in fact his possession—the law raises no presumption that the other has conveyed his title to the one in possession.' Logan v. Ward, 58 W. Va., 375, 52 S. E., 401, (5 L. R. A. (N. S.) 156).''

There is another controlling fact which we think eliminates the question of any presumption of conveyance from Patrick Reels, and that is the very claim made in the deeds from John Owens, et al., to W. R. Baker. In one deed the parties recite that they are the heirs of Mary Owens and in the other they expressly limit their con-

veyance to include "Being the balance due the parties of the first part as heirs of said Mary Owens . . . ".

These recitals in the deeds to Baker are admissible for the purpose of defining the extent of their claim at the very time they executed the deed to Baker. Moody v. Butler, 62 Texas, lower p. 212; McGee v. Paul, 221 S. W., 256.

Justice Greenwood in the case of Magee v. Paul, 110 Texas, 70, 221 S. W., 256, holds:

"Since it is not consistent with human experience for one really owning property of value to acquiesce for a long period of time in an unfounded hostile claim, the rule is found which permits the inference that an apparent owner has parted with his title from evidence, first, of a long, asserted and open claim, adverse to that of the apparent owner; second, of non-claim by the apparent owner; and third, of *acquiescence* by the owner in the adverse claim."

In Walker v. Caradine, supra, the Supreme Court holds:

"Isaac Caradine having died before the certificate was issued in the first instance, and the presumption being that there had been no transfer before the land was patented, the defendant must rely for a judgment upon the presumption of a grant from his heirs. We are concerned in this court only with Mrs. Sharp's title. Her father moved with her to Louisiana, and died while she was very young. She has ever since resided there. If she was ever in Texas the evidence does not show it. If she ever knew that a certificate had been granted to her father for land in Texas or that a patent had ever issued to him to a survey of land in the State until a short time before this suit was brought, it is not disclosed by the record. If there is any circumstance which tends to prove either that she had a knowledge of her rights or of the possession and claim of the defendant and of those through whom he derives his title, it does not appear by the testimony. Now presumptions of grant have usually been applied to incorporeal hereditaments. For example, where the owner of land has seen another use a way over it for twenty years, and where such use has been inconsistent with the idea that it did not have a legal origin, the presumption of a grant may become conclusive. But it is apparent that in such a case the presumption derives its main support from the acquiescense of the owner of the fee. So also if one has the apparent title to a tract of land, knowing that another has taken adverse possession, acquiesces in such adverse enjoyment of the property for a period of twenty years, a jury would be justified in presuming a grant in the absence of circumstances tending to a contrary conclusion. But in both of these cases it is apparent that the presumption has its foundation in the acquiescense of the holder of the apparent title. *There can be no acquiescence in an adverse possession without a knowledge that it exists.*"

Knowledge being held necessary to establish acquiescence we are

not willing to extend the doctrine to those cases where it is necessary to impute knowledge to sustain acquiescence. It might be that if the owner resides in the immediate vicinity of the land and that the other party exercised dominion over the land and his claim was notorious, that the knowledge of same would be imputed to the owner But in this case where the parties do not reside in the neighborhood of the land and where they know nothing of it, residing in another county, and there being not even a scintilla of evidence that their ancestors had any knowledge of the claim, knowledge should not be imputed to them of the adverse claim. In this case there is another feature of the evidence which we think concludes the right of appellees to recover. There is no evidence of any long asserted claim by John Owens, et al, or any acts of ownership, or any exercise of dominion over the land; the first time they appear in the evidence is when they convey to W. R. Baker. From that time on there is an assertion of ownership and the payment of taxes and receipt of some revenue from the land by Baker and his vendees, but we do not think that this can be made to relate back to John Owens, et al, as heirs of Mary Owens for the purpose of perfecting a title in their favor by presumptive deed from Patrick Reels.

We therefore recommend that the questions propounded by the Court of Civil Appeals be answered in the negative.

BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.