## BURKS et al. v. BRINKLEY et al.

### No. 5874.

Court of Civil Appeals of Texas. Texarkana.

Jan. 29, 1942.

Rehearing Denied March 12, 1942.

Cornelius & Heaton and P. G. Henderson, all of Jefferson, and Abney & Abney, of Marshall, for appellants.

Carney & Carney and Tom J. Mays, all of Atlanta, H. A. Leaverton, of Longview, and M. L. Walters, Jr., of Jefferson, for appellees.

HALL, Justice.

Appellants, heirs of T. C. Burks and wife, and H. H. Groneman, a leaseholder, instituted this suit against appellees in the District Court of Marion County for title and possession of 80 acres (sometimes referred to as 82 acres) of land, a part of the Abram Moore and Gaines Coor surveys. Appellants also specially pleaded title under the 10-year statute of limitation. Appellees answered, disclaiming any interest in the north 40 acres of the 80-acre tract and as to the south 40 acres pleaded not guilty. Appellees by cross action asserted title to said south 40 acres of land,

and specially pleaded the 3, 5, 10 and 25 year statutes of limitation. Vernon's Ann. Civ.St. arts. 5507, 5509, 5510, 5519. Trial was to the court without a jury, resulting in judgment for appellees for title and possession of the south 40 acres of the 80-acre tract; and for H. H. Groneman for the leasehold estate in the entire tract and against appellants. There is no appeal by Groneman and appellants make no claim against him, so no further notice will be taken of his claim.

Appellants' first seven points are directed to the action of the trial court in permitting the introduction of certain evidence relating to the execution and contents of a lost deed from T. C. Burks and wife to W. J. Melton. It is asserted that no proper search had been made for the original deed as a predicate for the introduction of secondary evidence to establish its execution and contents. All parties claim through a deed executed by Thomas E. Blackburn to T. C. Burks, covering the whole 80-acre tract of land, and appellees' claim arises under an asserted unrecorded lost deed from T. C. Burks and wife to W. J. Melton conveying the south 40 of the 80-acre tract. As stated in the outset, T. C. Burks and wife are the ancestors of appellants and their claim to this land comes through them.

■■ The trial court found as a fact that "on or about the 1st day of December 1889, T. C. Burks and wife, Mrs. Alice Burks, conveyed to W. J. Melton the South 40 acres of the 80-acre tract described in plaintiffs' (appellants') petition." This is the land now in controversy. Mrs. Melton, surviving widow of W. J. Melton, deceased, testified that she saw a deed which had been executed by T. C. Burks and wife in favor of her husband, W. J. Melton, and in his possession, covering the south 40 acres of the 80-acre tract. She also testified that this deed was acknowledged before one Stalcup. This deed was never placed of record. Witness stated that she had searched for this deed but had been unable to find it. With respect to the consideration paid by W. J. Melton to T. C. Burks for this land, Mrs. Melton testified: "We were living at the Bynam place, and he (her husband) traded and got a yoke of oxen, and traded them to Dick Spratford and got cows, and traded them to Tom Burks for that 40 acres we got." The witness testified further that she and her husband lived on this 40-acre tract one year,

and on account of the death of a child, they became dissatisfied, sold the place and moved away about the year 1890; that the 40 acres here in controversy lay south of Burks' house and in view of it across the field. William Brinkley and wife, ancestors of some of appellees, moved on to this south 40 acres about 1896, as found by the trial court, and used and occupied it as a home until 1909, when Annie Brinkley, widow of William Brinkley (who died in 1901), and her children moved away. Annie Brinkley died in 1912. Appellees' evidence is to the effect, further, that the 40 acres was occupied and used by their tenants each and every year from 1909 until 1917. Appellee Major Brinkley testified that, "Mr. Burks asked me when was the last time we had paid taxes on the Brinkley land, and I told him I didn't know, because we boys hadn't ever paid any taxes. And he said when was the last time the taxes had been paid, and I said I didn't know; and he said, 'You Brinkley heirs had better get together and pay the taxes or you will lose the land.'" Appellee William Brinkley testified that "He (Burks) asked me had we paid taxes on it (the Brinkley land) and then he asked me had Atwar sold hers, and then he asked me did my daddy sell out, and I told him I didn't think so. He asked me again about the taxes, and I told him I had never paid any and I didn't know if anybody had. And he said it was about time we paid the taxes or the government would take it. Then he asked me why I didn't pay the taxes on all of it and get it, and if not that, to figure out my part and pay that." The record further shows that in at least five instruments of writing, to which appellants were parties (three mineral leases and two warranty deeds, all duly recorded), conveying the north 42 acres, they stated their interest in the 80 acres as 42½ acres and called for their south line to be "Thence East *along Brinkley North boundary line* 650 vrs. a stake in the East boundary line of the Gaines Coor Survey." (Italics ours.) W. L. Hartzo, a brother of Mrs. W. J. Melton, a man about 79 years of age at the time of the trial, testified that the elder Burks told him he sold the 40 acres here in controversy to W. J. Melton. The record discloses that an agent of the Brinkley heirs sold the timber on the south 40 acres of land in 1924. And the assessor's record of Marion County shows, with respect to the rendition of the original 80 acres (82 acres) of the Gaines

Coor survey by the parties to this suit, the following:

"1896 Mrs. L. A. Burks rendered 41 acres

"1897 Mrs. L. A. Burks rendered 41½ acres

"1898 thro 1901 Mrs. L. A. Burks 40 acres

"1902 Ann Brinkley rendered 41½ acres

"1903 thro 1910 Ann Brinkley and L. A. Burks each rendered 40 acres

"1911 through 1939 Burks rendered 42½ acres

"1911 thro 1939 Ann Brinkley rendered 40 acres."

At no time, then, from and after 1896 until 1940, did appellants or those through whom they claim render the land here in controversy for taxation. We conclude that the facts and circumstances outlined above are sufficient to support the presumption of a conveyance of the land in controversy from T. C. Burks and wife to W. J. Melton in the year 1889, as found by the trial court. This holding is sustained by the recent case of Love v. Eastham, 154 S.W.2d 623, 625, by our Supreme Court, wherein the rule with respect to presumption of a conveyance is stated to be: "In order to establish a presumptive conveyance, there must be a long and notorious claim of ownership, nonclaim by the ostensible owner, and the acquiescence on the part of the ostensible owner in the claim of the adverse party." See, also, Stephens v. House, 112 Tex. 459, 248 S.W. 30; Walker v. Caradine, 78 Tex. 489, 15 S.W. 31, 32; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818, writ refused; Duke v. Houston Oil Co. of Texas, Tex.Civ.App., 128 S.W.2d 480, writ dismissed.

[3, 4] The trial court also denied appellants' claim of title under the 10 years statute of limitation. This finding of fact by the trial court, as well as the finding that T. C. Burks and wife, ancestors of appellants, had parted with the title to the south 40 acres to Melton, supported as they are by the evidence in this record, are binding upon this court. Traders & General Ins. Co. v. West Texas Utilities Co., Tex.Civ.App., 156 S.W.2d 271. Therefore the judgment of the trial court that appellants "take nothing against the defendants (appellees) as to the South 40 acres" of the premises described in appellants' petition and adjudging title thereto in appellees, must be upheld by us. Appellants' points are respectfully overruled.

The record further reflects that in December, 1900, Smith and Moseley by general warranty deed conveyed to William Brinkley 40 acres of the Gaines Coor survey described as follows:

"Beginning at the corner of land owned by Mrs. Alice Burks, that is the south east corner of said Burks land, a Black Jack tree mrkd. F. B. for corner, bearing tree North 3½ vrs. another South 62 vrs.

"Thence East 612 vs a stake for corner, Red Oak North 26 vs. S 1½ ft.

"Thence North 318 vrs. to a stake;

"Thence West 612 vrs. to a corner

"Thence South to place of beginning containing forty (40) acres of land."

These field notes are substantially the same as those contained in the deeds from J. R. Moseley to Smith and Moseley, from Colgin and wife to J. R. Moseley, and from W. J. Melton and wife to Colgin, all calls to begin at the southeast corner of the Burks land, and described the land conveyed as being a part of the Gaines Coor survey. The field notes common to all these deeds place the land conveyed outside the Coor survey. At the southeast corner of the Burks tract no such witness trees as called for in these field notes were found, but at or near the southwest corner of the Burks original 82-acre tract there was located a Black Jack with the letters T. B. or F. B. marked thereon. As heretofore pointed out, there are certain conveyances by appellants of their tract of land lying immediately north of the 40-acre tract here in controversy calling for their south line to be coincident with Brinkley's north line. None of Brinkley's improvements were on the land actually described in his deed. He lived upon, used and controlled the 40 acres immediately South of the Burks 42-acre tract. The Brinkleys rendered their land for taxes as being a part of the Coor survey. These facts and circumstances, in our opinion, are sufficient to warrant the trial court in finding as a fact that the beginning call in all said deeds, and especially the one under which the Brinkleys held, the southeast corner of the Burks land, was an error of the scrivener, and that the beginning call was intended to be the southwest corner of the Burks land. This conclusion is certainly a reasonable one. By substituting the southwest corner of the original Burks 82-acre tract for the call for its southeast corner, designated in Brinkley's deed as

the beginning corner, the field notes will cover and include the south 40 acres of the land described in appellants' petition, the land here in controversy. It will describe a part of the Coor survey upon which the Brinkleys resided, and its north line will be located where appellants in their several oil leases and deeds pointed it out to be. Duren v. Presberry, 25 Tex. 512, 513; Harrell v. Morris, Tex.Sup., 5 S.W. 625; Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074. It is true that the deed on its face is not ambiguous, but when its field notes are applied to the ground an ambiguity arises as set out above. This latent ambiguity warrants the introduction of parol evidence. Humble Oil & Refining Co. v. Ellison, 134 Tex. 140, 132 S.W.2d 395, and authorities there cited. This finding by the trial court correctly fixes the record title to this land in appellees.

But should we be mistaken in the conclusions reached above, still we think the judgment of the trial court must be sustained under both the 5 and 10 year statutes of limitation.

For the reasons indicated above, it is our opinion that the judgment of the trial court must be affirmed, and it is so ordered.