ANTONIO H. BRUNI ET AL V. LUCIO VIDAURRI ET AL.

No. 7930. Decided November 11, 1942.
Rehearing overruled December 16, 1942.
(166 S. W., 2d Series, 81.)

140

*Hicks & Dixon* and *Yale Hicks,* all of Laredo, and *D. A. McAskill,* of San Antonio, for petitioners.

It was error for the Court of Civil Appeals to hold that the trial court had erred in rendering judgment in favor of petitioners against certain of the respondents, when it was shown that several years before the trial of the case the said respondents had conveyed all their interest to the said A. M. Bruni, by general warrant deeds, and at the time of trial the petitioners were in possession of said property, and had been claiming same under the original grantee. Watkins v. Smith, 91 Texas 589, 45 S. W. 561; Williams v. Chew, 19 S. W. (2d) 68, White v. Greene, 129 S. W. (2d) 801; Curdy v. Stafford, 88 Texas 120; Watrous Heirs v. McGrew, 16 Texas 506.

*E. J. Dryden,* of Laredo, *J. B. Robertson* and *Greenwood, Moody & Robertson,* all of Austin, for respondents, and *T. M. West,* of San Antonio, for respondents, "West's Clients."

Seeking to have the application for writ of error dismissed because not filed in time, respondents cite Tribble v. Uvalde Company 300 S. W. 23; National Express Co. v. Hamlin, 114 Texas 375, 269 S. W. 1024.

It was not error for the Court of Civil Appeals to hold that petitioners were not entitled to have the judgment awarding

them full title in the land sustained, when they only possessed an undivided interest in the title thereto. Baldwin v. Goldfrank, 88 Texas 249, 31 S. W. 1064; Steddum v. Kirby Lbr. Co., 110 Texas 513, 221 S. W. 920; Boone v. Knox, 80 Texas 642, 16 S. W. 448.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

The suit is by petitioners A. H. Bruni and others, as independent executors, trustees and devisees under the wills of A. M. Bruni and Consolacion H. Bruni, deceased, against respondents Lucio Vidaurri and one hundred sixty-nine others, being, except those joined pro forma, some of the descendents, and successors in title to descendants, of Jose Vasquez Burrego (and against many other parties who did not appeal from the trial court's judgment) for the title and possession of thirteen tracts of land in Webb and Zapata Counties, aggregating about 96,000 acres, being parts of a grant of approximately 240,000 acres made by the government of Spain to the said Jose Vasquez Borrego about the year 1750. The petition contains formal allegations of trespass to try title and also allegations of ownership by adverse possession under the five, ten and twenty-five year limitation statutes.

The district court, after several weeks of trial before a jury, withdrew the case from the jury and rendered judgment in favor of petitioners Bruni et al against respondents Vidaurri et al, for the title and possession of the thirteen tracts of land described in the petition. Other tracts of land or interests in them were awarded by the judgment to certain of the parties, but as to whom no question has been raised in the Court of Civil Appeals or in this court. Those who appealed from the trial court's judgment (and who will be designated herein respondents) disclaimed as to two of the thirteen tracts awarded to petitioners, attacking the trial court's judgment by assignments of error relating only to the other eleven tracts, which contain in the aggregate about 79,000 acres. The Court of Civil Appeals, holding that issues of fact were made by the evidence, particularly in respect to adverse possession and presumed grant, reversed the trial court's judgment as to the eleven tracts of land, and the award of costs in connection therewith, and remanded the cause for a new trial of the issues involved, affirming the trial court's judgment in all other respects. 154 S. W. (2d) 498.

Respondents' motion to dismiss the application for writ of error is overruled. The first motion for rehearing filed in the Court of Civil Appeals by petitioners was overruled October 1, 1941, with a written opinion. Petitioner filed a second motion for rehearing, which was overruled October 22, 1941. The application for writ of error was filed in the Court of Civil Appeals on November 21, 1941, more than thirty days after the first motion was overruled but within thirty days after the overruling of the second motion.

■ It clearly appears from an examination of the two opinions that the Court of Civil Appeals made at least two rulings in the second opinion that were not made in the first opinion The new ruling related to the question of tenancy in common and to the right of petitioners to an affirmance of the trial court's judgment against a number of the respondents shown to have no title. Petitioners in their second motion for rehearing assigned error in respect to the questions discussed and decided in the second opinion and reiterated assignments made in the first motion. The second motion for rehearing was in our opinion properly filed to assign error in the new rulings and to support the application for writ of error thereafter filed. There is nothing in the record suggesting that the second motion was filed as a means of securing an extension of the time for the filing of the application for writ of error. Roth v. Murray, 105 Texas 6, 141 S. W. 515; Tribble v. Uvalde Co. (Com. App.) 300 S. W. 23.

The principal question in the case, affecting all of the land in controversy, is whether the evidence conclusively proves that A. M. Bruni acquired title by adverse possession under the ten year statute.

At a very early date, probably before the death of the original grantee, Jose Vasque Borrego, the grant was divided into three tracts, Dolores, the upper, Corralitos, the middle, and San Ygnacio, the lower. On Borrego's death title to all of the land passed into two of his children, Fernando, a son, and Manuela, a daughter, who married Vidaurrui, subject to claimed rights of Manuela's son, Jose Fernando Vidaurri. Partition was thereafter made between Fernando Borrego and Manuela Viduarri whereby the San Ygnacio tract was set apart to Fernando and the Dolores and Corralitos tracts to Manuela Vidaurri. The eleven tracts in controversy are within the Dolores and Corralitos subdivisions.

On August 3, 1885, the widow and children of Lauriano Vidaurri, who was one of the descendants of Manuela Vidaurri, sold and conveyed to A. M. Bruni, for a recited consideration of $18,000.00 paid, 38,000 acres of the Borrego grant, the deed reciting that the 38,000 acres were conveyed by the grantors out of their respective interests and that the grantee should take the 38,000 acres in a solid body whenever he so desired. As early as 1886 or 1888 Bruni fenced 38,000 acres of the grant and used the same for pasturing cattle. Thereafter, and until he died in 1931, Bruni made many purchases and procured deeds from descendants and vendees of descendants of Manuela Vidaurri conveying interests in the Borrego grant. Respondents state in their briefs that by the purchases so made by Bruni and by a few purchases made by his executors, petitioners became and were the owners at the time of the trial of approximately 88% undivided interest in the land in controversy, leaving outstanding approximately an undivided 12% interest unless title thereto has been acquired by adverse possession.

The deeds thus made to Bruni, with two or three exceptions, conveyed no specific tracts of land but merely undivided interestes in the grant, that is, each deed conveyed either all or a part of the undivided interest owned by the grantor in the Borrego grant, sometimes in one or more of the subdivisions of the grant. Some of the deeds described the property conveyed as a certain number of acres undivided. The record contains the statement, which is supported by evidence and in which all counsel apparently acquiesced, that the various deeds made to Bruni by descendants and vendees of descendants of Manuela Vidaurri conveyed "according to their reading," 114,000 acres in the Borrego grant, but that those who made the deeds to Bruni actually owned by inheritance or by purchase a total of only 106,000 acres.

As Bruni acquired additional undivided interests, after his original purchase made in 1885, and his fencing in 1886 or 1888 of 38,000 acres of land within the grant, he built new fences and enclosed additional land until in the year 1901 he had enclosed all of the land in controversy herein. One of the witnesses who was familiar with Bruni's acquisition and use of the land testified that as Bruni bought interests he enclosed land equal in quantity to what he thought was the share of the person from whom he bought. Bruni developed the land

into several highly improved ranches, fencing them and constructing on them houses for cow boys, fence riders and other employees, corrals, many tanks and other improvements. The fences enclosing the several ranches and pastures were maintained in good condition and remained in substantially the places where they were built prior to 1901 until Bruni's death in 1931. During all of that time, from 1901 until 1931, Bruni had the ranches and pastures well stocked with cattle and held and exercised exclusive use and possession of the land, rendered it for taxes and paid the taxes and claimed the land as his own. No one was permitted in the ranches or pastures unless he had business there. The ranches were well known as Bruni's ranches. The cattle on them carried Bruni's brand and all of the gates were marked by his name. Bruni resided in Laredo but he visited the ranches frequently. He was well known in the community, being engaged in ranching, buying and selling cattle, and other kinds of business.

Respondents offered no evidence questioning Bruni's open, continuous and exclusive use and possession of the land. Their answer to the proof of possession and use made by the evidence offered by petitioners is that it was not conclusively proven that Bruni's possession was adverse to respondents. Two reasons are strongly urged in support of this position. The first is that Bruni, through his purchases of undivided interests, became a cotenant of respondents, the owners of other undivided interests, and that there is in the record no conclusive proof of notice to respondents that Bruni had repudiated their title and was holding adversely to it or of such notoriety in his assertion of hostile claim that notice thereof would be presumed. Respondents make the further contention that the repeated acts of Bruni over a long period in purchasing undivided interests in the Borrego grant from many of the descendants of Manuela Vidaurri, and other acts of Bruni asknowledging in effect ownership of interests by certain persons claiming under Manuela Vidaurri, prove or tend to prove recognition of respondents' ownership of undivided interests in the land and at least raise an issue of fact as to the adverse or hostile character of Bruni's possession.

■ In our opinion Bruni, by the conveyance to him in 1885 of undivided interests in the grant owned by certain of the descendants of Manuela Vidaurri, became a tenant in common with the descendants of Manuela Vidaurri, whose interests he had not acquired. The descendants of Manuela Vidaurri, each

owning an undivided interest in the grant, were cotenants, and Bruni, by accepting and claiming under a deed which conveyed to him interests owned by some of the cotenants, became a tenant in common with the other co-owners. Heilbron v. St. Louis S. W. Ry. Co., 52 Texas Civ. App., 575, 113 S. W. 610, 613; Hess v. Webb, 113 S. W. 618, 623 (affirmed 103 Texas 46, 123 S. W. 111); Martinez v. Bruni (Com. App.) 235 S. W. 549; Morgan v. White, 50 Texas Civ. App., 318, 110 S. W. 491, 494, (application for writ of error refused); 14 Am. Jur. p. 91, Sec. 20.

We conclude further that according to the undisputed evidence Bruni continued to be a cotenant, and to hold possession as cotenant, of those of the descendants, and vendees of descendants, of Manuela Vidaurri who did not execute deeds conveying their undivided interests to him, at least until the time when, about the year 1901, he completed the construction of his fences so as to enclose all of the land in controversy. The evidence shows that from 1885 until about 1901 Bruni obtained many deeds conveying undivided interests to him and that as he obtained those deeds he extended his enclosures so as to take possession of a total quantity of land equal to what he believed to be the shares of those from whom he had bought. Thus it appears that he was continuing to acquire title, to enlarge his ownership and to extend his possession through and under deeds executed by persons who, like his first grantors, owned undivided interests in the grant as descendants, or vendees of descendants, of Manuela Vidaurri.

By reason of the foregoing facts this case is unlike Meaders v. Moore, 134 Texas 127, 132 S. W. (2d) 256, 125 A. L. R. 817. In that case Moore, the possessor, had entered upon the land as a trespasser and had been in adverse possession for several years before he made his first purchase and procured a deed from one of the co-owners. It was held that he did not, merely by taking deeds from owners of undivided interests, become a tenant in common with the owners of the other undivided interests, that is, that it was not reasonably to be inferred solely from his action in procuring the deeds that he acknowledged the validity of the grantors' title or its superiority over his existing claim or that he intended to "change his possession, which was before adverse, into a possession subordinate to the newly-acquired title." In the instant case Bruni had no existing adverse claim when he began to pro-

cure deeds from the Vidaurri heirs. His possession began under a deed from several of the co-owners and was extended from time to time under deeds from others of the co-owners.

■ Bruni's possession did not become adverse as to his co-tenants unless they were given notice that he was claiming the land adversely to them or unless his acts in the assertion of adverse claim were of such unequivocal notoriety as to charge them with notice. Phillipson v. Flynn, 83 Texas 580, 19 S. W. 136; Stiles v. Hawkins, (Com. App.) 207 S. W. 89; Wiggins v. Holmes, 39 S. W. (2d) 162 (application for writ of error refused); Moore v. Knight, 127 Texas 610, 94 S. W. (2d) 1137; Republic Production Co. v. Lee, 132 Texas 254, 121 S. W. (2d) 973; Tinsley v. Mays, 251 S. W. 577; Wallis v. Long, 75 S. W. (2d) 138 (application for writ of error refused); Brown v. Phillips Petroleum Co., 144 S. W. (2d) 358, 361.

Most of the evidence in the record as to the character of Bruni's possession of the land in controversy relates to the period from 1901 until 1931. It was during that time that he brought the ranches into a high state of improvement, had and exercised continuous, exclusive use and possession, and openly asserted his ownership of all of the land. The evidence as to his possession during that time would, in our opinion, have been sufficient to sustain the trial court's action in instructing a verdict for petitioners, that is to say, it would have proven conclusively that his possession for a period of more than ten years between 1901 and 1931 was adverse as to respondents and that his acts in the assertion of adverse claim were of such unequivocal notoriety as to charge them with notice, but for evidence in the record which we believe raises an issue of fact as to the adverse or hostile character of his possession during that period, and which evidence consists in the main of proof that Bruni, after he had completed the enclosure and had taken possession of the land in controversy, purchased many undivided interests in the grant from descendants of Manuela Vidaurri and persons claiming under them and procured deeds conveying their interests to him and continued as long as he lived thus to acquire additional interests.

■ The purchase by a person in possession of land of another's claim to or interest in the land may or may not be a recognition of the validity or superiority of the claim or title purchased. In making the purchase the possessor may intend to

recognize the adverse title and claim under it. On the other hand, he may buy in order to quiet his possession and protect himself from adverse litigation; he may "buy his peace." The question is usually one of fact to be determined by the intention as disclosed by what was said by the parties and by the circumstances surrounding the transaction. Meaders v. Moore, 134 Texas 127, 132 S. W. (2d) 256, 125 A. L. R. 817; Thompson v. Moore, (Com. App.) 14 S. W. (2d) 803; Cuellar v. Dewitt, 24 S. W. 671 (application for writ of error refused); Houston Oil Company of Texas v. Davis, 62 Texas Civ. App., 658, 132 S. W. 808; Matthews v. Houston Oil Company of Texas, 299 S. W. 450; Chapman v. Dickerson, 223 S. W. 318. Judge Nickels, in Thompson v. Moor, supra, makes the following clear statement as to significance of word or acts of the possessor indicating recognition of title in another:

"But peaceable possession, even when accompanied with acts whose prima facie import is that of hostility, may not, in truth, be adverse, for intent (of the possessor) may bring his acts, etc., into consonance with recognition of the privileges of true ownership. Intent, then, is a controlling factor. * * * Hence evidence of declarations (prior to suit) expressing or implying amicable purpose, or evidence of acts importing such purpose, are admissible as against the possessor, and when admitted are sufficient (at least) to raise an issue of fact."

The record contains no evidence of what was said by the parties when Bruni procured the deeds conveying undivided interests to him and little if any evidence explanatory of the circumstances under which the purchases were made and the deeds executed. The testimony of one witness, although in part the expression of his opinion, throws some light upon Bruni's intent in the acts by which he procured the deeds and took and held possession of the land. J. C. Martin, Bruni's son-in-law and who as an executor of Bruni's estate is one of the petitioners, testified that Bruni from time to time until his death bought undivided interests in the Borrego grant. After having testified about substantial payments made by Bruni in settlement of claims made by persons asserting ownership of interests in the grant, Martin was asked on cross examination: "How can you reconcile that with your testimony that Mr. Bruni was claiming to own all that land?" He answered: "Well, I guess if he recognized that those people had a valid claim he would buy it, he would not try to keep any land that did not belong to him. I do not think he would." The next ques-

tion was: "In other words, it is a fact that Mr. Bruni never claimed any land except what he bought." The witness answered: "Yes." There were no objections to these questions or to the answers.

■ Respondents refer in their briefs to other evidence as tending to prove that Bruni's possession was not hostile. We do not discuss that evidence because we believe that the evidence to which we have referred is sufficient to raise an issue of fact. Proof of the taking by Bruni of one or several deeds conveying undivided interests after he had acquired possession of all of the land in controversy, with no evidence explaining the purpose of their taking, would not, we think, have required the submission of an issue as to the character of his possession, that is, whether it was adverse or not adverse. Meaders v. Moore, 134 Texas 127, 132 S. W. (2d) 256; Note 125 A. L. R. 825-838. We do not have, however, merely the unexplained buying of one claim or a few claims. The facts in evidence are that Bruni first entered into possession of land within the Borrego grant under a deed that conveyed to him undivided interests owned by a few of the descendants of the original grantee's daughter and that thereafter he continued as long as he lived to purchase undivided interests in the grant from others of said descendants, buying many of those interests after he had fenced and taken possession of all of the land in controversy and some of them after he had possessed it for more than ten years. These facts, considered in connection with the testimony of J. C. Martin, above quoted, constitute in our opinion evidence from which a reasonable mind might infer that during the period of his possession and use of the land in controversy Bruni recognized the ownership of undivided interests in the land by those of the descendants of Manuela Vidaurri whose interests he had not acquired. They cannot be disregarded as no evidence, despite the testimony of long continued peaceable and exclusive use and possession and of accompanying acts importing hostility.

Petitioners make the point that the record contains no evidence of the purchase by Bruni of any interest in land in the orralitos subdivision during a period of approximately 12 years from January 9, 1916, to February 12, 1928, and contend that possession during that period perfected a limitation title that could not be affected by proof of purchases thereafter made. A number of purchases from descendants of Manuela Vidaurri were made by Bruni after February 12, 1928,

the deeds conveying the grantors' interests in the Corralitos and Dolores subdivisions of the grant.

■ The possessor's acknowledgment of title in another when made before the completion of the bar will defeat limitation. Houston Oil Co. v. Pullen (Com. App.) 272 S. W. 439; Thompson v. Richardson (Com. App.) 221 S. W. 952; Whitaker v. Thayer, 38 Texas Civ. App. 537, 86 S. W. 364. While such acknowledgment, if made after the limitation title has been completed, does not have the effect of destroying the title thus completed, it is evidence tending to show that the possession was not adverse. Bracken v. Jones, 63 Texas 184, 188; Whitaker v. Thayer, 38 Texas Civ. App., 537, 86 S. W. 364, 366; Cuellar v. DeWitt, 5 Texas Civ. App., 568, 24 S. W. 671, 672 (application for writ of error refused). If the purchase by Bruni after February 12, 1928, were made in recognition of the validity or superiority of the claim or title purchased (and the record makes this a question of fact) then such acts of recognition, in view of the rule above stated, cannot be disregarded as having no bearing whatever upon the question whether Bruni's possession was hostile during the period from 1916 to 1928.

Petitioners complain of the action of the Court of Civil Appeals in holding that the undisputed evidence is not sufficient to authorize the trial court to presume as a matter of law a grant or grants from respondents or those under whom they claim. They rely in support of the theory of presumed grant both upon the proof of possession by A. M. Bruni of all the land in controversy and upon evidence of possession of the Corralitos tract and the south half of the Dolores tract by Alejandro Vidaurri and his two sons, Manuel and Lauriano Vidaurri during an earlier period.

After careful examination of the evidence and the briefs we are convinced that the Court of Civil Appeals correctly concluded that "the evidence in this case, upon the issue of presumed grant or deed, is not of that conclusive nature necessary to support a finding of a presumed grant as a matter of law." 154 S. W. (2d) 503.

■ We have held in discussing the claim of title under the ten year statute of limitation that the evidence raises an issue of fact as to the adverse character of Bruni's possession. If

Bruni's possession was not adverse or hostile to respondents it cannot serve as the basis for the presumption of a grant of respondents title. Magee v. Paul, 110 Texas 470, 478, 221 S. W. 254; Stephens v. House, 112 Texas 459, 466, 248 S. W. 30; LeBlanc v. Jackson (Com. App.) 210 S. W. 687, 691.

Many years ago, prior to 1830, the children of Jose Fernando Vidaurri, who was a son of Manuela Vidaurri, became by inheritance from their father the owners of the Corralitos tract or of interests in the same. Alejandro Vidaurri, one of Jose Fernando's sons, together with his son Lauriano, bought undivided interests of other children of Jose Fernando, but it is not shown that Jesusa Vidaurri, who was Alejandro's sister and who married Victorino Dovalina, conveyed her undivided interest to Alejandro or to any other person. Many of the respondents are descendants of Jesusa Dovalina. They are often referred to in the record and briefs as Dovalinas.

Petitioners rely primarily upon the testimony of Nazario Palacios as evidence of long asserted adverse claim of the Corralitos tract by Alejandro Vidaurri and his two sons, nonclaim by Jesusa Dovalina, and those claiming under her, and acquiescence by Jesusa Dovalina, and those claiming under her, in the adverse claim, to support the inference that Jesusa Dovalina and her successors parted with their title. The testimony does not conclusively prove these essential facts. The witness was 76 years old. His own knowledge about possession and claim by Alejandro Vidaurri or his sons is confined to the period from 1874 to 1883, when the witness was from ten to eighteen years of age. Much of his testimony is hearsay.

When Alejandro and his sons took possession of the Corralitos tract they were cotenants of Jesusa Dovalina (or of those claiming under her) who had acquired her undivided interest when Alejandro acquired his first undivided interest and by the same title. We do not find in the testimony of Palacios or elsewhere in the record conclusive proof that the possession or claim of Alejandro Vidaurri and his two sons was adverse to Jesusa Dovalina's title.

■ We think further that acquiescence by Jesusa Dovalina, and those claiming under her, in the claim asserted by Alejandro Vidaurri and his sons is not established as a matter of law. A case of presumed grant is not made merely by proof of

long, adverse claim of ownership and proof of nonclaim on the part of the apparent owner. There must be evidence proving or tending to prove acquiesence by the apparent owner in the claim of the adverse party. Walker v. Caradine, 78 Texas 489, 493, 15 S. W. 31; Baldwin v. Goldfrank, 88 Texas 249, 258, 31 S. W. 1064; Stephens v. House, 112 Texas 459, 466-467, 248 S. W. 30; Love v. Eastham, 137 Texas 462, 466, 154 S. W. (2d) 623. We do not hold that direct evidence of acquiesence is required. Acquiescence may be shown by circumstantial evidence.

While we believe that the testimony of the witness Palacios, together with corroborative circumstances shown by the record, would probably support findings that the possession and claim by Alejandro Vidaurri and his sons was or became adverse as to the Dovalinas and that the latter acquiesced in the adverse claim, the evidence in our opinion is not so cogent and convincing that reasonable minds could not differ as to what conclusions should be drawn from it with respect to those essential facts.

Petitioners contend that the action of the trial court in instructing a verdict for them should be sustained as against 96 of the respondents, being those who claim under Jose Fernando Vidaurri, who was a grandson of the original grantee and one of the children of Manuela Vidaurri. They rely, for conclusive proof that those respondentn have no title to the land in controversy, upon a document dated February 27, 1826 which certifies that it sets out a true copy of Clause Three of an agreement of partition between Fernando Borrego, one of the sons of the original grantee, and his sister Manuela, and upon recitals contained in a deed dated May 4, 1829, from Margil Vidaurri, a son of Manuela, to Hipolito Pena, together with evidence of nonclaim on the part of the heirs and descendants of Jose Fernando Vidaurri to the Dolores subdivision, and a number of deeds by which, petitioners assert, the said heirs and descendants divested themselves of all title to the Corralitos subdivision.

■ It is not contended that the recitals in the two documents operate by way of estoppel against the heirs of Jose Fernando Vidaurri and those claiming under him. Recitals in a deed do not estop persons who are neither parties to the deed nor privies of the parties. Houston v. Blythe, 60 Texas 506;

Watkins v. Smith, 91 Texas 589, 45 S. W. 560; Bartell v. Kelsey, 59 S. W. 631; Schriver v. Taylor, 143 S. W. 231; Roberts v. Waddell, 94 S. W. (2d) 211; Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 345, 114 S. W. (2d) 226, 136 S. W. (2d) 207. Petitioners' petition is that the two ancient documents are full proof of the statements of fact contained in them, because they are public instruments, the contents of which are "certifications" by public officials rather than recitals by the parties.

The facts said to be thus fully proven are: by the first instrument, that the Borrego grant was partitioned between Manuela and her brother Fernando, the Dolores and Corralitos subdivisions being set apart to the former and the San Ygnacio subdivision to the latter; and by the second instrument, that Margil Vidaurri, as executor of the estate of Manuela, his mother, made an equal division of her portion of the Borrego grant among four of her children and the children of her deceased son, Jose Fernando Vidaurri, and thereby set aside the Corralitos ranch to the children of Jose Fernando Vidaurri as their portion of the land owned by their grandmother.

Several articles of Wheless' Compendium of the Laws of Mexico are cited in the application for writ of error. They provide in substance that an executor, after approval of the inventory and accounts, must make partition of the estate, that partition legally made vests in each heir exclusive title to the property assigned to him, that the notary must himself compose or reduce to written form his notarial acts or instruments and record them in the proper book of his protocol, that all public instruments are full proof in and out of court, and that notaries are prohibited from issuing "certifications" of any act or fact not appearing in their protocols. Wheless' Compendium of the Laws of Mexico, Articles 560, 561, 791, 934, 942.

It is our opinion, after careful examination of the two documents, that when they are accepted as full proof of the facts to which the public officials who composed them certified, they neverthelss do not, of themselves or when corroborated by other evidence in the record, constitute as against those who claim under Jose Fernando Vidaurri conclusive proof of a valid partition whereby the Corralitos ranch was

set aside to the heirs of Jose Fernando Vidaurri and accepted by them as their full share in the Dolores and Corralitos subdivisions. It is of course recognized that, by exception to the hearsay rule, the recitals in the two ancient documents are admissible as evidence of the facts recited. Magee v. Paul, 110 Texas 470, 478, 221 S. W. 254; Bendy v. W. T. Carter & Bros. (Com. App.) 269 S. W. 1037; Moses v. Chapman, 280 S. W. 911; McCormick and Ray's Texas Law of Evidence, Sections 612-617, pp. 771-779.

In the first of the two documents the official who composed it certifies that Margil Vidaurri appeared before him and requested a certified copy of the Third Clause of the agreement between Fernando Borrego and Manuela, his sister. He sets out a copy of the Third Clause and certifies that it is a true copy of the original as found in his archives. The substance of the Third Clause is that, of the lands belonging to their deceased father, Fernando cedes to Manuela the Dolores and Corralitos tracts and Manuela to Fernando all the remaining lands. The documents does prove that Manuela and Fernando executed an agreement by which they partitioned the land between them, but the official does not certify and the document does not conclusively prove that Manuela and Fernando were at that time sole owners of the land or that their agreement affected the rights of Jose Fernando Vidaurri and his heirs.

The second of the two documents is a deed of date May 4, 1829, by which Margil Vidaurri sold and conveyed to Hipolito Pena four shares, being the shares of himself, his sister and two of his brothers, in the land inherited by them from their mother, Manuela. By the document the official certifies that Margil Vidaurri, the grantor, appeared before him and said that he sold and conveyed the said lands or shares to Hipolito Pena. The remainder of the document consists of certification by the official of what the grantor Margil said and did for the purpose of exhibiting or evidencing the title or interest that he owned and conveyed to the grantee, including the presentation to the official of an attested copy of the same Clause Three as that set out in the first document. The document contains, apparently as a part of what the grantor said to the official, the following:

"Which part the grantor acting as executor divided equally between five heirs. One-fifth of it, the Corralitos ranch, was assigned to their heirs of his deceased brother, Jose Vidaurri.

The land assigned to the remaining four heirs, began at the above mentioned Cerritos de San Francisco taking an up river course to the road which leads to Dolores and ending at the lower edge of the lomitas which belonged to the deceased Flores. The donor pledging himself that in case the heirs of his deceased brother would not be satisfied with the land assigned to them, to remeasure by a standard in which all the heirs would concur, this adding or deducting as the case might be to the one-fifth of the Corralitos' heirs."

Thus the official certified in the document that the grantor said to him that he as executor had divided the land among the heirs of Manuela, assigning the Corralitos ranch to the heirs of Jose Fernando Vidaurri; he did not certify that such petition had in fact been made. The document does not show that Margil exhibited to the official a copy of a deed or other instrument evidencing a partition among Manuela's heirs. We understand the provisions of the Mexico code to mean that public instruments are full proof of the facts to which the official certifies. The document proves that Margil stated that he made the partition. It does not conclusively prove that he in fact made it.

Many pages in the briefs are devoted to a discussion by petitioners of other facts and circumstances in evidence tending to prove that partition was made and that the heirs of Jose Fernando Vidaurri accepted the land set apart to them, and by respondents of facts and circumstances tending to prove the contrary. We do not discuss the evidence in detail because, as has been indicated, the question is one of fact for the jury, the recitals relied upon by petitioners being, as against those claiming under Jose Fernando Vidaurri or his heirs, evidence of the facts recited rather than conclusive proof of them. The evidence afforded by those recitals is not uncontradicted. It is sufficient, without discussing other evidence which appears to be contradictory, to refer to an ancient document in the record from which it might reasonably be presumed that partition effective against the heirs of Jose Ferando Vidaurri was not made.

The document is Jose's will, which petitioners offered in evidence with no statement of the purpose for which it was offered. It is to be noted also that one of counsel for petitioners testified that the instrument is genuine and that, while it is not like a judicial will, its old age makes it practically a judicial

will. He testified further that according to the history he had checked Jose Fernando Vidaurri was the one that remained in possession of the Corralitos ranch.

The will of Jose Fernando describes carefully the debts that he owes and the property that belongs to him. It declares that the ranch of Corralitos is his, together with its range, and that it was given to him in the year 1776 by his grandfather, Jose Borrego; that with his grandfather's consent he took possession of it, occupying it with his stock; that he has continued to occupy it as his own; and that when his grandfather died he left a special communication that the ranch and the range should not be taken away from him. The will directs the executors first to make disposition of movable property so that the range may remain for his heirs to be partitioned among them.

If the Corralitos ranch belonged to Jose Fernando Vidaurri as his will tends to prove, his rights and the rights of his heirs were not affected by the agreement between Manuela, his mother, and Fernando, his uncle, partitioning the entire grant. On Manuela's death, her grandchildren, the heirs of Jose Fernando, were entitled to a one-fifth interest in her property. If in fact they already owned the Corralitos ranch as heirs or devisees of their father, it would reasonably be inferred from that fact that it was not set apart to them by their grandmother's executor as their full share in her estate and that they did not accept it as such.

Before the validity of the Borrego was finally determined a number of surveys were located in conflict with it. One of such surveys is Survey 1292. It is tract No. 13 in the district court's judgment. This survey was conveyed to A. M. Bruni on November 17, 1927, by Raymundo Z. Saldivar. The deed recites that the survey is in the Muralla pasture, the ranch founded by Francisco Perez, which has been fenced for a period of over 40 years.

One of the assignments in the application for writ of error presents the proposition that the trial court's judgment should be affirmed as to Survey 1292 because the undisputed evidence shows that the deed from Saldivar conveyed to A. M. Bruni a matured limitation title good against all of the Borrego heirs. The application for writ of error and the briefs quote testimony of Clemente Villarreal, who owns land in the Bor-

rego grant, and of E. J. Foster, for many years county surveyor of Webb County, as evidence to prove that Mrs. Dolores Perez and Caldivar, her adopted son, acquired good limitation title to Survey 1292 under the ten year statute. The substance of Villareal's testimony as to possession by Saldivar and Mrs. Perez is: Saldivar inherited the Saldivar pasture from Mrs. Perez. She owned the land for 60 or 70 years. It has been fenced for about 50 years. In answer to the question "Was she claiming exclusive possession of it?" the witness answered: "She was absolute owner of it."

Foster testified in substance as follows: The Murralla pasture (which is the same as the Saldivar pasture) has been fenced within the knowledge of the witness since 1904. It was in the possession of Mrs. Perez and later in the possession of Saldivar, her adopted son. He knew Mrs. Perez. She claimed to own the pasture exclusively. They had it fenced and it is still fenced. They lived on it. A number of persons, including Mrs. Perez and Saldivar, claimed title by limitation to sections of the Borrego grant. Some of them have been there for 40 or 50 years. "They did not claim under the Borrego at all. They claimed by sections."

The record contains no other evidence than that above set out relating to possession and use of Survey 1292 by Mrs. Perez and Saldivar. In our opinion it clearly appears from the statement of the evidence that it does not establish the peaceable and adverse possession required by the statutes to preclude the rights of the owners. Revised Civil Statutes of 1925, Articles 5510, 5514, 5515.

A like contention is made as to possssion of the Tule pasture, which is the tenth tract described in the trial court's judgment and which was conveyed to A. M. Bruni by W. H. Adams by deed dated February 28, 1907, containing a description by metes and bounds. The evidence relied upon to prove that Adams perfected a limitation title to the land is even less convincing than the evidence above discussed about possession of Survey 1292. The witness Villarreal testified that he knew W. H. Adams; that Adams fenced the Tule pasture many years before he conveyed it to Bruni; that Adams "was the owner of El Tule." Foster in his testimony referred to Adams as one of those who acquired title by adverse possession to sections of land in conflict with the Borrego grant. He testi-

fied further that "W. H. Adams owned the Tule pasture"; that he and other persons named "acquired title against people claiming under the Borrego"; that "they stayed on the land by adverse possession, claimed it by limitation." The testimony of the two witnesses that Adams owned the Tule pasture or acquired title to it is nothing more than the expression of their opinions that he had and exercised adverse possession sufficient to give him title under the statute of limtation. Their opinions are not supported by statements as to the character of the possession and use. The testimony does not conclusively prove that Adams perfected a limitation title.

The Court of Civil Appeals should have affirmed the trial court's judgment in favor of petitioners against Sofia Garcia de Barrera for the title and possession of the thirteen tracts described in the trial court's judgment.

Petitioners offered in evidence a deed dated February 13, 1928, executed by Sofia Garcia de Barrera and her husband whereby for a consideration of $800.00 they sold and conveyed to A. M. Bruni all of their right, title and interest in the Borrego grant, the deed providing, however, that it is "understood and intended to hereby convey unto the said A. M. Bruni only such interst in said grant as we now own and this conveyance is not. intended to convey any future interest in said grant which may be hereafter acquired by us or either of us." By the deed Bruni took title to whatever interest the grantors owned in the land at the time the deed was executed and delivered. The record contains no proof that Sofia Garcia de Barrera thereafter acquired any interest in the grant.

■ The argument is made in her behalf that an interest which passed to her under the will of her aunt, Narcisa Vidaurri de Sanchez, did not vest in her until the will, which was probated in Mexico in the year 1889, was admitted to probate in Zapata County as a muniment of title in 1930. It is held, however, that the title of a devisee under a foreign will duly probated, like that under a domestic will, becomes effective, or vests, as of the date of the testator's death, the probate in the foreign state and the record in Texas being "legal formalities required to evidence and give full effect to that right." Haney v. Gartin, 51 Texas Civ. App. 577, 113 S. W. 166 (application for writ of error refused); Long v. Shelton. 155 S. W. 945 (application for writ of error refused); 44 Tex. Jur. Sec. 212, pp. 778-779.

Sofia Garcia de Barrera was called as a witness by counsel representing her. Objections were sustained to questions propounded to her which called for an explanation of the deed that she made to Bruni. She did not testify, and was not asked to testify, to any fact tending to prove that she acquired interest in the Bruni grant after she executed that deed. The only inference that can reasonably be drawn from the facts in evidence is that she acquired no interest in the land in controversy after she made the deed to Bruni and that she had no interest in it at the time of the trial.

In our opinion the trial court's judgment in favor of petitioners against respondents Agapita Vidaurri de Ramirez, Jesus Maria Vidaurri, Guadalupe Vidaurri, Miguel Vidaurri, Jose Lauro Vidaurri and Laureano Vidaurri should be affirmed, because they disclaimed all interest in the land sued for except an undivided interest in a tract described in their answer, which appears to be a part of the Dolores subdivision of the grant, and because it is shown by undisputed evidence that they do not own the interest which they claim.

The brief filed by respondents in the Court of Civil Appeals states that the undivided interest claimed by the six respondents last above named was purchased and acquired by them as evidenced by a deed from Antonio Pena Vidaurri executed January 1, 1890. That deed thus describes the land or interest conveyed:

" * * * all that certain tract of land situated in Zapata County out of the grant granted to Basquez Borrego by the Spanish government ab. No. 209, as follows:

"All my interest that I have as heir of my mother Antonia Vidaury and also my interest that I have as heir of my father, Hipolito Pena Garcia.

"The land herein sold it being all my interest except 200 acres to be taking out in whatever the say Anto. Pena Vidaury may select."

Petitioners offered in evidence a deed executed by Antonio Pena Vidaurri to A. M. Bruni on September 16, 1887, by which he granted, sold and conveyed:

" * * all my certain right, title and interest in and unto that Grant of land known and designated as the Jose Basquez Bor-

rego tract or grant, situate, lying and being within the Counties of Zapata and Encinal in the said State of Texas, and commonly known as the Coralito tract. The interest herein conveyed is that which I acquired by inheritance as heir of my deceased father, Hipolito Pena Garcia, and also from my Mother, Antonia Vidaurri, deceased."

Thus the interest that Antonio Pena Vidaurri undertook on January 1, 1890, to convey to Agapita Vidaurri Ramirez and the other five respondents above named had been theretofore, on September 16, 1887, sold and conveyed by him to A. M. Bruni.

Respondents insist that because of the phrase "and commonly known as the Coralito tract" appearing as a part of the description contained in the deed from Antonio Pena Vidaurri to A. M. Bruni, only the interest of the grantor in the land in the Corralitos subdivision was conveyed.

■ We believe that the language used in the deed to Bruni, above quoted, clearly manifests the intention of the grantor to sell and convey all of his interest in the whole of the Borrego grant. At the very beginning the grantor with certainty defines what he intends to convey as *all* of his right, title and interest in the grant. The words "and commonly known as the Coralito tract" are an additional description of what has already been defined. The deed contains nothing suggesting an intention on the part of the grantor to use the quoted phrase for the purpose of limiting or narrowly defining what is granted. The additional description is in substance a statement that the Borrego grant is commonly known as the Coralito tract, and if it is intended to refer to the Corralitos subdivision, it is obviously erroneous because that subdivision is one of several parts of the grant.

A subsequent erroneous addition should not be permitted to limit or impair what has been definitely and certainly described. Devlin quotes with approval from an Oregon case as follows:

"If the instrument defines with convenient certainty what is intended to pass by it, a subsequent erroneous addition will not vitiate it." Devlin on Deeds (3d Ed.) Vol. 2, Sec. 1038, p. 2014.

Such erroneous statement does not render the deed ambiguous and should not serve to lessen the interest conveyed. West v. Hermann, 47 Texas Civ. App. 131, 104 S. W. 428, 431; Hatcher v. Stipe, 45 S. W. 329, 16 Am. Jur., Sec. 287, p. 600.

The same conclusion, that is, that the grantor intended to convey his entire interest in all of the Borrego grant and not merely his interest in the Corralitos subdivision, is drawn from a consideration of the whole instrument. As has been said, the very beginning of the descriptive matter defines clearly and definitely what is conveyed, namely, all of the grantor's right, title and interest in the Borrego grant; and the concluding sentence of the description states that "the interest herein conveyed is that which" the grantor inherited from his father and mother. These clear expressions of the grantor's intention are neither contradicted nor rendered ambiguous by the erroneous statement that the Borrego grant is commonly known as the Corralitos tract.

■ Respondents discuss at length in their briefs various acts on the part of A. M. Bruni, most of which are purchases evidenced by deeds to him from persons who appear to be heirs of some of the grantees in the deed from Antonio Pena Vidaurri to Agapita Vidaurri de Ramirez and others, as evidence tending to show a recognition by Bruni of the validity of that deed or of ownership by the said grantees of interests in the Borrego grant. We believe the record shows that the purchases here referred to by respondents were made by Bruni in settlement of adverse claims asserted against him and not in recognition of the validity or superiority of the claims. But since we have held that, by the prior deed from Antonio Pena Vidaurri, Bruni acquired all of the grantor's interest in the whole of the Borrego grant and that he deed is not ambiguous, later acts by Bruni tending to prove a construction of that deed against his interest or recognition of rights in others would not impair the title which had vested in him. Shropshire v. Commerce Farm Credit Co., 120 Texas 400, 415, 30 S. W. (2d) 282, 39 S. W. (2d) 11, 84 A. L. R. 1269; Amarillo Oil Co. v. McBride, 67 S. W. (2d) 1098, 1101, (application for writ of error refused) ; Meaders v. Moore, 134 Texas 127, 132 S. W. (2d) 256, 125 A. L. R. 817.

The Court of Civil Appeals held that judgment cannot be rendered in favor of petitioners against those of respondents

who are shown by the record to have no title, because petitioners, in order to recover the entire title from those shown to have no title, are required to establish that they are tenants in common, as well as the fact that said respondents are without title, and because the question whether petitioners are tenants in common with respondents, or some of them, is a question of fact not yet determined. It cites in support of this ruling Land v. Banks, (Com. App.) 254 S. W. 786, 30 A. L. R. 1; Davidson v. Wallingford, 88 Texas 619, 32 S. W. 1030; Steddum v. Kirby Lumber Co., 110 Texas 513, 221 S. W. 920.

■ The ruling, on our opinion, is erroneous. As has been shown in the foregoing discussion of two assignments of error, it was established by undisputed evidence that respondents Sofia Garcia de Barrera, Agapita Vidaurri de Ramirez, Jesus Maria Vidaurri, Guadalupe Vidaurri, Miguel Vidaurri, Jose Lauro Vidaurri and Laureano Vidaurri have no title or interest in the land in controversy. Long before this suit was instituted A. M. Bruni, petitioners' predecessor in title acquired by deeds all the rights and interests that the respondents above named had and claimed.

Petitioners proved ownership, through purchases and deeds from descendants and vendees of descendants of the original grantee, of approximately an eighty-eight per cent undivided interest in the land in controversy but did not definitely prove the extent of the ownership thus acquired. The undisputed evidence further shows, however, that petitioners and their predecessor have had actual, continuous and exclusive possession of all of the land for more than thirty years and the evidence leaves no doubt as to the fact of actual possession. Because of that prior possession by petitioners, the respondents above named, who have no title whatever but are asserting ownership of interests, are, in their relation to petitioners, in the position of trespassers; and by reason of that prior possession and without other proof of title, petitioners are entitled to judgment against the said respondents for title and possession of the entire interest in the land in controversy. Wilson v. Palmer, 18 Texas 592; Watkins v. Smith, 91 Texas 589, 45 S. W. 560; Payton v. Loustalott (Com. App.) 53 S. W. (2d) 1012; Williams v. Chew, 19 S. W. (2d) 68.

This ground of recovery against respondents who have no title should not be denied petitioners on account of their hav-

ing offered no proof of title by limitation and title by conveyance of undivided interests. Watkins v. Smith, 91 Texas 589, 45 S. W. 560; Williams v. Chew, 19 S. W. (2d) 68.

Judgment in favor of petitioners against the seven respondents does not admit petitioners, as cotenants, into joint possession with those respondents or with the other respondents. Petitioners are not cotenants with the seven respondents and are not admitted into possession with them, because the said respondents own no interest and are not in possession. The judgment against the seven respondents does not admit petitioners into joint possession with the other respondents, because petitioners are already in possession. The other respondents will not be deprived by the judgment of the opportunity to obtain on another trial, in accordance with the evidence then before the court, the adjudication of their rights and interests in relation to the rights and interests of petitioners.

By several assignments of error in their brief in the Court of Civil Appeals respondents complain of the trial court's order by which all costs of court, with certain exceptions, were taxed against all of the defendants jointly and severallly. The principal complaint is as to costs taxed on account of the service of citation by publication upon many persons and for a substantial fee allowed an attorney appointed to represent minor defendants and parties served by publication.

The case was tried after the consolidation of sixteen separate suits. Each of the first fifteen suits was filed by one or more of the respondents against petitioners and in them the respondents sought to recover title and possession of undivided interests claimed by them in the Borrego grant. Thereafter petitioners filed this suit against the respondents who had instituted the fifteen suits, joining as defendants a great number of persons who were not parties in those suits. Many of the new parties, being unknown heirs and nonresidents and persons whose residences were unknown, were cited by publication. Mr. G. C. Mann, attorney at law, was appointed by the court to represent a number of minor defendants, some of whom, it seems, were served in person and some by publication in this, the last suit filed. Thereafter the trial court consolidated the several suits, ordering that the rights of all parties be adjudicated in this suit. The attorney appointed to represent the parties cited by publication and the minors participated

actively and diligently in the trial and was allowed a substantial fee, which was taxed as costs of court. Following rendition of judgment in favor of petitioners against all of those, including respondents, who were defendants in the trial court (with exceptions not material here) for the title and possession of the land, it was further adjudged by the court that "the plaintiffs named in said judgment recover all costs of court, including the costs in the cases consolidated herewith, of the defendants named in said judgment, jointly and severally" except as to certain named defendants.

The Court of Civil Appeals, without expressly ruling on the several questions as to costs presented by appellants, rendered judgment reversing the trial court's judgment in favor of the Burni appellees and against the appellants for the title and possession of the land "and the award of costs in connection therewith" and remanded the cause for a new trial.

Liability for costs of trial court, including those incurred in the first trial, as well as those accruing after the cause is remanded, will be determined by the trial court when the case is again tried and in accordance with the entire record and the facts then before the court. We do not find in the record facts to justify the trial court in taxing, jointly and severally, against all of the defendants the fee allowed the attorney and the costs for citations by publication issued before the consolidation of the sixteen suits.

The general rule is that the fee for representing a minor defendant should be taxed against the minor personally served with citation when the judgment in the cause is unfavorable to him and it is shown that he has property out of which the fee can be collected, but that when the minor has no property or estate out of which the fee can be collected, the court should charge it against the successful plaintiff. The fee is allowed as compensation for services rendered the minor but it is authorized to be taxed as a part of the costs of suit and is deemed costs incurred by the plaintiff within the meaning of the statute. Article 2052, Revised Civil Statutes of 1925. The fee allowed for representing a nonresident defendant or a defendant whose place of residence is unknown, cited by publication, should, under the same general rule, be taxed against the successful plaintiff, since no personal judgment can be rendered against the defendant for costs. When there is another defend-

ant or other defendants than the minor or the party cited by publication, no part of the fee should be taxed against the other defendant or defendants unless facts or circumstances are shown by the record from which it clearly appears that he or they should, in fairness, be required to pay part or all of the fee. Ashe v. Young, 68 Texas 123, 125-126, 3 S. W. 454; Holloway v. McIlhenny Co., 77 Texas 657, 662, 14 S. W. 240; Mitchell v. Mitchell, 80 Texas 101, 115, 15 S. W. 705; Barker v. Temple Lumber Co., (Com. App.) 12 S. W. (2d) 175, 180; Buckley v. Runge, 136 S. W. 533, 537-538, (application for writ of error refused) ; Pryor v. Krause, 168 S. W. 498, 504, (application for writ of error refused).

The Texas Rules of Civil Procedure are in substance the same as those construed in the decisions above cited. Rules 127, 131, 141, 173, 244; Revised Civil Statutes of 1925, Articles 2052, 2056, 2066, 2158, 2159.

■ In this case, as was true in Barker v. Temple Lumber Company, cited above, there is nothing in the record to indicate what proportion of the compensation allowed the attorney was on account of services rendered in behalf of the minors and what proportion of it was on account of services rendered in behalf of those cited by publication, and there is nothing to show that the minor defendants had property out of which costs could be collected. Respondents made common defense with those were made new parties in the suit filed by petitioners, but we do not believe that this fact or other facts shown by the record are sufficient to justify the imposition of liability upon respondents for costs which it appears would not have been incurred but for petitioners' desire to bring all possible claimants into the suit. This not being a suit for partition, all issues and controversies between petitioners and respondents could have been finally determined without the additional parties defendant.

On another trial, the fee allowed the attorney and all costs incident to the issuance and publication of citations by publication, which were issued in cause No. 12712 before the entry of the order consolidating the several other causes with that cause, should be taxed against petitioners, unless proof is made of facts, not now appearing in the record, sufficient to afford good cause for adjudging those items of costs otherwise. We

have carefully considered the other assignments of error relating to costs and conclude that they present no error.

The judgment of the Court of Civil Appeals, in so far as it reverses the trial court's judgment for petitioners against respondents Sofia Garcia de Barrera, Agapita Vidaurri de Ramirez, Jesus Maria Vidaurri, Guadalupe Vidaurri, Miguel Vidaurri, Jose Lauro Viduarri and Laureano Viduarri and remands the cause for new trial of the issues as between said parties, is reversed and the judgment of the district court in favor of petitioners against the seven respondents above named for the title and possession of the thirteen tracts of land awarded by that judgment to petitioners and therein described is affirmed. In all other respects and as to all other parties the judgment of the Court of Civil Appeals is affirmed. Costs incident to the appeal to the Court of Civil Appeals are taxed against petitioners and costs in this court are taxed against the seven respondents above named.

Opinion adopted by the Supreme Court November 11, 1942.

Rehearing overruled December 16, 1942.