Ruth BELL, et vir, et al., Appellants,

v.

Johnny Foster LYON & Mrs. Zula Ryan, Appellees.

No. B2923.

Court of Appeals of Texas, Houston (14th Dist.).

May 6, 1982.

Rehearing Denied June 24, 1982.

William Steven Steele, Lawrence, Thornton, Payne & Watson, Houston, for appellants.

George Moorman, Moorman & Tate, Brenham, James A. Brady, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and SAM ROBERTSON, JJ.

SAM ROBERTSON, Justice.

This is a trespass to try title suit. Following jury findings establishing title by limitation to the ⅔ disputed interest in a 200 acre tract to be in appellees, the trial court entered judgment accordingly. We reverse and remand.

A detailed statement of the evidence is necessary for clarity, and since many of the names are similar, all individuals will generally be referred to by their given names. J. W. and Dee Ryan, husband and wife, both died intestate in 1940 and 1937 respectively, leaving three children: Hancock, Grady and Jimmy. There was no administration of their estates. Hancock died intestate in 1948 leaving three children: Ruth, Rosalie and Billy. There was no administration of his estate. Ruth (Mrs. H. C. Bell) was one of the plaintiffs in the trial court. Rosalie, who died in 1973, was the wife of Selden Henslee, the other plaintiff in the trial court. After his death in 1981, L. W. Gray, administrator of his estate, was substituted as party plaintiff. Zula Ryan, one of the defendants in the trial court, was the wife of Grady who died in 1960. Johnny Foster Lyon, the other defendant in the trial court, was the grantee of the total 200 acres under a deed from Zula, executed in 1967.

Prior to trial, it was stipulated that appellants were the record owners of the disputed ⅔ interest to the 200 acres and appellees were the record owners of the ⅓ interest in the 200 acres. Grady had acquired the ⅓ interest of Jimmy and the ⅑ interest of Billy in 1950 through a recorded instrument which purported to confirm title to the property in Grady by virtue of recitations therein that "during their lifetime" J. W. and Dee Ryan had given the land to Grady as a gift. Although this "instrument" contained recitations that both Ruth and Rosalie were heirs, neither signed this "instrument."

Grady and Zula executed oil and gas leases to the entire 200 acres in the years 1949 and 1950. Following Grady's death in 1960, the entire 200 acres was listed in his inventory. Between the years 1960 and 1963, Jimmy grazed cattle belonging to both him and Zula on the disputed 200 acres and other adjoining Ryan property. When Jimmy died in 1963, Billy began grazing cattle on the property. In January, 1964, Zula

and Billy entered into a lease agreement, filed of record, whereby Zula leased to Billy "all her right, title and interest" in the 200 acres for pasturing cattle for two years at an annual rental of $468.00. In March, 1964, Billy entered into a lease agreement, also filed of record, with his sisters, Rosalie and Ruth, whereby they leased to him all their "right, title and interest" in the surface of the 200 acres for pasturing cattle and other livestock for a period of two years at an annual rate of $132.00.[1]

In 1967, Zula executed a general warranty deed to Johnny Foster Lyon, purporting to convey the entire 200 acres, which was recorded on June 9, 1967. However, during trial in the court below, Johnny confirmed that Zula only "warranted such title as she had inherited and no more."

In 1969, Johnny erected a fence around the 200 acres, but Billy continued in possession thereof and continued grazing cattle. On June 29, 1970, an attorney representing Johnny wrote to Rosalie and Ruth notifying them that Johnny had acquired title to the 200 acre tract of land and that he was claiming this property "openly, hostile and adverse to the claim of anyone including any claim that is asserted by the two of you." On the same date, the same attorney wrote to Billy informing him that Johnny did not want him using the property rent free any longer and that he was either to remove his cattle or pay a rental of $600 per year. On July 1, 1970, Billy wrote to the attorney advising him that "[s]ince my sisters have an un-divided [sic] interest in this tract of land, and I have made arrangements with them, I expect to continue grazing the land, and the placement of locks by the Lyons' to signify ownership of the 200 acres of land and its operations are not in accordance with the law . . . ." Further, in the letter, he stated that the previously demanded fee of $700 yearly rental was unreasonable "considering the economical returns expected from 156 acres of land." He agreed to the yearly rental of $600.00 a

---

1. Additionally, the same parties entered into an easement whereby Billy was granted "the free and uninterrupted use, liberty, privilege and easement of passing in and along and over" a portion of the 200 acres "forever." This easement was likewise filed of record.

year conditioned upon "a longer term contract" and enclosed the first $600.00 payment.

By letter dated July 12, 1970, Johnny accepted the $600.00 as lease rental on the "200 acres pasture for 1970 through 1974" and further advised Billy that "this acceptance of rental is to in no way disclaim any of my interest in and to the entire 200 acres."

Thereafter, on March 2, 1971, Billy entered into a lease agreement with his sisters Rosalie and Ruth for their ⅔ undivided interest of the 200 acres for a period of five (5) years, and this lease was filed of record on April 12, 1971. Finally, suit was instituted by Ruth and Rosalie's husband on April 25, 1980. Defendants answered asserting title by limitation under the 3, 5, 10, and 25 year statutes of limitation.

The case was submitted to the jury on six (6) special issues. In answer to Special Issue No. 1, the jury found that Johnny Lyon had "peaceable, continuous and adverse possession under a title from the State of Texas" for more than three (3) years after appellants' cause action accrued and before the commencement of the suit. In answer to Special Issue No. 2, the jury found that Grady Ryan and his wife Zula had "peaceable and adverse possession of the land described, cultivating, using and enjoying the same, paying taxes thereon and claiming under a deed ... duly registered" for a period of five (5) years "before April 25, 1980, from May 2, 1950." In answer to Special Issue No. 3, the jury found that Johnny Foster Lyon and those under whom Johnny Foster Lyon acquired title "had peaceful [sic] and adverse possession of the land ... cultivating, using and enjoying the same continuously for a period of ten (10) years before the filing of suit on April 25, 1980." In answer to Special Issue No. 4, the jury did not find that Grady Ryan and wife Zula had peaceable and adverse possession of the land, cultivating, using and enjoying the same continuously for a period of ten (10) years from May 2, 1950. Likewise, in Special Issue No. 5, the jury failed to find that title had been per-

fected under the twenty-five (25) year statute of limitations by either Johnny Foster Lyon or Grady and wife Zula. Finally, in Special Issue No. 6 the jury found that Johnny Foster Lyon, in person, or through a tenant or tenants, had "peaceable and adverse possession of the land cultivating, using and enjoying the same and paying taxes thereon and claiming under the deed or deeds duly registered" for a period of five (5) consecutive years before April 25, 1980.

Appellants assign 34 points of error. Since we find error in the court's charge, we address only those assignments.

By points of error 28 through 31, appellants contend error was committed by the trial court in failing to respond to their objections to and requested instructions concerning repudiation by Grady and Zula Ryan. By points of error 32 through 34, appellants contend error was committed by the trial court in failing to respond to their objection to and requested instruction concerning recognition of title by Grady and Zula Ryan. We consolidate these points of error for discussion since the rules governing the disposition of each complaint are so closely related.

In the instructions to the jury, the trial judge gave definitions of the terms "claim of right," "hostile," "peaceable" and "adverse possession" in the following form.

The term "A Claim of Right" is defined as an intention to claim land as his own.

The term "Hostile" is defined as intentionally holding out to claim the land as his own to the exclusion of others.

The term "Peaceable" is defined as continuous and not interrupted by adverse suit to recover the estate.

The term "Adverse Possession" as used in these issues, is meant an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another. Possession in order to be adverse must be exclusive. Exclusive means possession by a claimant or those using the land at the will of a claimant. Payment of the taxes of itself on the property does not constitute the assertion of an adverse right.

The facts of this case, as outlined above, clearly show that appellants were cotenants with their uncle, Grady Ryan, and his wife, Zula. Thus, for the statute of limitations ever to run against appellants and for the other cotenants ever to establish title by limitation, repudiation must have occurred and must have been brought home to plaintiffs.

As Justice Norvell said, speaking for the Supreme Court in *Todd v. Bruner*, 365 S.W.2d 155, 159 (Tex.1963),

Insofar as the true owner of property is concerned, there is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession. It is not unusual for one cotenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants. Cotenancy is a common form of land tenure when owners belong to the same family. This results largely by the operation of the statute of descent and distribution and commonly followed customs and practices relating to the making of devises of lands. The legal presumption follows a generally recognized habit or practice based upon years of observed experience. The statutes of limitation are statutes of repose. They are intended to settle and support land titles ˊand are not designed to afford a method whereby one member of a family may appropriate property belonging to his kinsman. Hence, the legal requirement that notice of repudiation of the common title should be clear, unequivocal and unmistakable.... Cotenancy—limitation situations often present the somewhat anomalous argument in which one cotenant in effect says, "Although I lived within a few miles of my cotenant, I never told him of my repudiation of our common title, but my actions with reference to the land itself were so unequivocal and notorious that he must have known of the repudiation that I never disclosed to him." The real property statutes of limitation as to co-tenants are not designed to run in secrecy and silence.

In addition to the evidence recited above concerning the execution of the May 2, 1950 instrument by Jimmy Ryan, Billy Ryan, and his wife Lois Ryan, conveying to Grady Ryan all their "right, title, interest and estate" to the 200 acres of land, a second instrument, identical in all material respects,[2] was admitted into evidence. This instrument is dated July 19, 1949 and is signed by Billy Ryan, his wife Lois, and Jimmy Ryan; however, in each of the places provided for the signature of Ruth Bell and her husband, and for Rosalie and her husband, the word "Refused" is written. Additionally, the jury had before it an unsigned instrument, labeled "Deed of Gift" but which we will refer to as a "quit claim deed" for purposes of this opinion, dated May 30, 1960, which, if executed by Ruth Bell and her husband, would have transferred to Zula Ryan "all their right, title, interest and estate" in the 200 acres.

█ Thus, it is too plain to admit of doubt that a fact question was raised whether there was a repudiation of the contenancy sufficient to begin the running of the statutes of limitation. *Walton v. Hardy*, 401 S.W.2d 614 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.). In this regard, we believe the reasoning of the court in *Bruni v. Vidaurri*, 140 Tex. 138, 166 S.W.2d 81 (1942), is applicable. There, Bruni, over a period of time, purchased an original undivided acreage and subsequently purchased additional tracts of land, fencing equivalent acres with each purchase. The question before the court was whether his claim was adverse to the cotenants. The court stated:

The purchase by a person in possession of land of another's claim to or interest in the land may or may not be a recognition of the validity or superiority of the claim and it was recorded.

**2.** The major differences are that family history is recited in more detail in the 1950 instrument

or title purchased. In making the purchase the possessor may intend to recognize the adverse title and claim under it. On the other hand, he may buy in order to quiet his possession and protect himself from adverse litigation; he may "buy his peace". The question is usually one of fact to be determined by the intention as disclosed by what was said by the parties and by the circumstances surrounding the transaction. *Id.* 166 S.W.2d at 87.

■ Likewise, under the peculiar facts of this case, a fact question was raised whether Grady and Zula had recognized the title of appellants, for if they did, such recognition would be fatal to a limitation claim. *Cuniff v. Bernard Corporation*, 94 S.W.2d 577, 579 (Tex.Civ.App.—Beaumont 1936, writ ref'd). There it was stated:

We think it is too well settled by the decisions of our courts to admit of argument that recognition of an owner's title by a limitation claimant during the limitation period is fatal to a limitation claim. (citing cases)

Thus, recognition of the defendants' title was an ultimate and controlling issue which, when found to exist, completely destroyed the plaintiffs' claim to title by limitation. Being an ultimate and controlling issue, it was proper for the court to submit it. (citing cases)

Appellee argues that the above case was "severely criticized" by the Supreme Court in *Pearson v. Doherty*, 143 Tex. 64, 183 S.W.2d 453 (1944), and argues if there is a possible conflict between special issues, the trial court should not submit both. We do not so construe *Pearson*. Rather we read it to mean the trial court should not receive a verdict if there is a conflict in the answers to the special issues. In fact, the Supreme Court said, "[A]t another trial of this case, if the facts are substantially the same as the facts of this record, *it will not be error for the court to submit Issues Nos. 3 and 15 as he did in this trial.*" *Id.* 183 S.W.2d at 456. (emphasis added)

Appellants objected to the court's definitions of "hostile" and "adverse possession" and submitted specially requested issues inquiring whether Grady or Zula had recognized the interests of Ruth and Rosalie in the property in 1949 or 1950 and whether Zula had recognized the interests of Ruth and Rosalie in 1960. Further, appellants filed written requested special issues in substantially correct form inquiring separately whether or not Grady, Zula and Johnnie had repudiated the interests of Ruth and Rosalie. In connection with such requests, appellants requested a definition, in substantially correct form, of "repudiation,"[3] and a specially requested instruction, in substantially correct form, which would have told the jury that recognition of a "valid interest in the land to be in Ruth Bell and Rosalie Henslee" would prevent the possession from being adverse to their interests "so long as such recognition continued."

We believe that under the facts of this case, a fact question existed whether Grady or Zula had repudiated the interests owned by their cotenants, Ruth and Rosalie. We further believe that a fact question existed whether Grady or Zula recognized title to be in their cotenants, Ruth and Rosalie. Appellants were entitled to have the jury appropriately instructed on these issues so that the fact questions could be answered. We sustain appellants' points of error in this regard.

■ In points of error 25 through 27, appellants contend error was committed by the trial court in failing to respond to their objections to and requested instructions concerning adverse possession as it related to the possession by Johnny Lyon.

As pointed out above, in answer to Special Issues Nos. 1 and 6, the jury found that the appellee Johnny Lyon had perfected title under the three year and five year statutes of limitation. In order for him to prevail, the burden was upon him to prove

---

3. The instruction states "repudiation means an open and notorious rejection and disavowal of the interests of Ruth Bell and Rosalie Henslee

and must be clear, unequivocal and unmistakable."

that his possession was adverse to Ruth and Rosalie.

The facts show that when Johnny purchased the property from Zula, Billy had been and continued to be in actual physical possession of the 200 acres. Johnny never took actual physical possession of the land other than through his tenant Billy. It was appellant's position that under these circumstances the statutes of limitations could not begin to run so long as Billy, the tenant of both appellee and appellants, was in possession of the land.

Accordingly, appellants objected to the court's definition of adverse possession as it related to possession by Johnny Lyon because it would permit the limitation claimant to claim through one using the land at his will even against cotenants. Appellants filed a written requested special definition, in substantially correct form, which would have told the jury, among other things, that in order for possession to be adverse, it must be exclusive; that the owner must be "wholly excluded" from possession by the claimant and that any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from being exclusive. The trial court declined to give the requested instruction.

The Texas Supreme Court, in *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925 (1948), quoted with approval the following, from 2 C.J.S., § 48:

> To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances, the law refers the possession to the person having the legal title." *Id.* 214 S.W.2d at 927.

Other cases have applied the same rule. *See*, e.g., *Hardeman v. Mitchell*, 444 S.W.2d 651 (Tex.Civ.App.—Tyler 1969, no writ); *Wicks v. Langford*, 320 S.W.2d 707 (Tex.

Civ.App.—Eastland 1959, no writ) and cases there cited.

We believe that under the circumstances of this case, appellants were entitled to have the above rule of law explained to the jury and to have the jury determine as a fact whether, in that context, appellee's claim was adverse. Accordingly, we sustain appellants' points of error in this regard.

In view of our disposition, which requires a new trial, we do not address appellants' other points of error. The judgment is reversed and remanded.

