Napoleon BLACK et al., Appellants,

v.

SHELL OIL COMPANY et al., Appellees.

No. 7669.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 23, 1965.

Rehearing Denied Dec. 14, 1965.

Paul Branch, Kilgore, Buck Florence, Hughes Springs, J. M. Lasater, Naples, Wesson Bartlett, Linden, Elmer Patman, Austin, T. R. Hudspeth, Tulsa, Okl., for appellants.

George K. Gilbert, Bartlesville, Okl., R. S. Sutton, Amarillo, Joe W. Lovelace, Linden, P. B. Walker, Houston, W. Ernest West, Canton, Austin C. Hatchell, Longview, John B. Spiers, Norman, Rounsaville, Hassell & Spiers, Jacksonville, Thomas Y. Banks, Tyler, Charles E. Thompson, Tom N. Cope, Atlanta, L. F. Burke, Longview, Tom Steele, Linden, Howard Carney, Carney & Mays, Atlanta, C. E. Nadeau, E. E. Shouse, Houston, for appellees.

FANNING, Justice.

This suit was brought by Shell Oil Company and Cities Service Oil Company against Napoleon Black and other named heirs of Hugh Black, Albert Leo Lee and other named heirs and successors of Janie (Jannie) Robinson Lee, Sinclair Oil Company, Mrs. G. T. Bartlett, a widow, Wesson Bartlett, Elmer Patman, and numerous other parties claiming various mineral and royalty interests in a tract of land in Cass County, Texas, called to contain 100 acres, but by survey having been determined to contain 93.99 acres.

Shell and Cities Service brought the suit in the nature of an action for a judgment declaring the oil and gas royalty, mineral and leasehold ownership of the subject land, and the ownership of production attributable to that part of the subject land included in a gas unit.

Except for an undivided leasehold interest owned by Sinclair with Shell in one lease, Shell and Cities Service jointly hold or own leases from other defendants in the suit. The leasehold interests are subject to certain overriding royalties as are stated in the judgment.

Trial was to the court without the aid of a jury. The trial court found that Napoleon Black and the other heirs of Hugh Black did not have adverse possession or title by limitations as against Janie Robinson Lee or her heirs or successors in title. The trial court found that a certain mineral deed dated March 31, 1937, from Janie Lee and husband to G. T. Bartlett and Elmer Patman conveyed ½ of Janie Lee's ½ interest (or ¼th of all) in the oil, gas and minerals in the land in controversy. These two rulings are the matters primarily involved on the appeal of this cause. The trial court in said judgment adjudicated the title to the surface, leasehold and royalty interests, including overriding royalty interests, and also allowed certain recoveries on certain warranties of title as shown by the judgment.

This appeal consists of two main controversies:

(1) Controversy 1 exists between the successors of Hugh Black, who claim all of the land (subject to various oil and gas leases) as against the successors of Angelina Robinson Black, his alleged wife, who claim an ownership of a total undivided ½ interest in the land, on the basis that said land was the community property of Hugh Black and Angelina Robinson Black. The effect of the judgment of the trial court

is that the successors of Hugh Black acquired an undivided ½ interest in the land, and that the successors of Angelina Robinson Black acquired an undivided ½ interest therein.

(2) Controversy 2 exists between parties claiming solely through the Angelina Robinson Black chain of title, which controversy is primarily with regard to the construction to be placed on a 1937 mineral deed from Janie (Robinson) Lee (sometimes spelled "Jannie"), the sole heir of Angelina Robinson Black, joined by her husband, Charlie Lee, Grantors, to G. T. Bartlett and Elmer Patman, Grantees. The successors of the grantee, G. T. Bartlett (including Sinclair) and Elmer Patman, the other grantee, and his successors in title, claim that all of the former undivided ½ mineral interest of Angelina Robinson Black, inherited by Janie Lee, was conveyed by said mineral deed; but the Lee-Moore et al. defendants-appellees, heirs and successors of Janie Lee, claim that an undivided ¼th mineral interest was conveyed by said deed, and that said heirs and successors still own an undivided ¼th mineral interest, and said heirs and successors also contend that Bartlett and Patman, and their successors in title are estopped to contend that the mineral deed in question conveyed more than an undivided ¼th interest.

Shell and Cities Service, who own the major portion of the leasehold interest, have adopted a neutral postition and have not appealed. Shell and Cities Service in their brief state in part as follows:

"If the findings and conclusions under paragraph 4 are held to be correct (these findings relate to controversy 1) but those under paragraph 5 are held to be incorrect, (these findings relate to controversy 2) among others, then these results obtain:

"1. The judgment would be correct as to the surface title.

"2. The heirs of Jannie Robinson Lee would have no interest in the minerals or royalties. In the present judgment they were credited with a total of a ¼ interest.

"3. Appellant Elmer Patman and his successors in interest would be entitled to a ¼ interest in the minerals and royalties and Appellants Mrs. G. T. Bartlett and Wesson Bartlett and their successors in interest would be entitled to ¼ of the minerals and royalties.

"4. There would be an adjustment in the leasehold estate of Sinclair and of the overriding royalties.

"5. Recovery provided in the judgment of the warranties would remain.

"This listing of possible results does not cover the leasehold estate of the plaintiffs which has been previously discussed.

"WHEREFORE, Shell Oil Company and Cities Service Oil Company pray that, after this Court has determined the mineral ownership to the land in controversy, in accordance with the stipulations, judgment be entered making such ownership subject to their leasehold estate and the leasehold estate of Sinclair Oil and Gas Company, if any." (Interpolations ours.)

We have reached the conclusion that the trial court's judgment as to controversy 1 should be affirmed and that the trial court's judgment as to controversy 2 should be reversed and remanded with instructions to enter judgment in accordance with the holdings and opinion hereinafter outlined.

## CONTROVERSY 1

We hold that the evidence was amply sufficient to show that Hugh Black was married to Angelina Black in 1882 and that the subject land was their community property.

Common source of title of the subject land is a deed dated March 15, 1883, from William C. Taylor and wife to Hugh Black. John H. Black, Ben J. Black, Josie Black

White and Sallie Black Smith, were the sole heirs of said Hugh Black, who died in 1912.

As shown by the marriage license and certificate, duly recorded, and placed in evidence, Hugh Black and Angelina Black (formerly Robinson) were married on Dec. 28, 1882, a few months prior to the above deed.

■ The marriage license and certificate having been placed in evidence, all reasonable presumptions will be indulged in favor of the validity of the marriage. "Evidence", Tex.Jur.2d, Sections 80, 253.

It was stipulated and undisputed that Janie (Robinson) Lee was the sole heir of Angelina (Robinson) Black, who died in 1890—about 7 years after the acquisition of of the subject property by her and her husband.

There was also testimony from Ed Garner, one of appellant's witnesses, to the effect that Hugh Black and Angelina Black "stayed in Uncle Hugh's old big house"; that Angelina "had her daughter (Janie) there with her when she came over there"; that she, Janie, "stayed there for a while", until "she left and Charlie Lee taken her."

■ Clearly the evidence was amply sufficient to support the finding of the trial court that Hugh Black and Angelina Black were married in 1882.

■ Since the subject land was acquired during the marriage of Hugh and Angelina Black, and the deed contains no language showing that it was the separate property of either spouse; and since there was no evidence that it was acquired by gift, devise or descent, said land must be deemed to be the community property of Hugh Black and wife Angelina Black. Art. 4619, Vernon's Ann.Tex.Civ.St.

■ We further hold that Janie Lee, the only heir of Angelina Black, under the record in this cause, was a tenant in common with her step-father Hugh Black and

his heirs and successors in title. See the following authorities: 15 Tex.Jur.2d 157, Sections 2, 3 & 6; Lange, Texas Practice—Land Titles, Vol. 4, p. 42, Sec. 339; 10 Tex. Law Rev. 336; Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81 (1942); Wrighton v. Butler, 60 Tex.Civ.App. 646, 128 S.W. 472, no writ (1910); Johnson v. Dickey, Tex. Civ.App., 231 S.W.2d 952, writ refused (1950); Republic Production Co. v. Lee, 132 Tex. 254, 121 S.W.2d 973 (1938).

We further hold that G. T. Bartlett and Elmer Patman, the grantees of the 1937 deed from Janie Lee, et vir, (hereinafter more fully referred to in controversy 2) and their respective successors in interest, Sinclair and other named parties, were tenants in common of the mineral estate with the successors of Hugh Black. See Willson v. Superior Oil Company, Tex.Civ.App., 274 S.W.2d 947, wr. ref., n. r. e. (1954), and authorities cited therein.

■ We further hold that the trial court did not err in finding that there was no adverse possession of the land in controversy as against Janie Robinson Lee and her heirs and successors in interest.

Among other things, Napoleon Black and other appellant heirs and successors of Hugh Black contend that the children of Ben Black have acquired title by limitations as against Janie Lee, her heirs, successors and assigns.

As hereinafter stated, Hugh Black died intestate in 1912. His daughter Sallie Black, died in 1918, intestate, without issue or a surviving husband. The surviving children of Hugh Black were Ben Black, John Black and Josie Black (White) who then were the owners of the entire former community ½ interest of Hugh Black in the subject land. The other ½ interest was then owned by Janie Lee.

On Dec. 7, 1922, John Black and wife conveyed to Ben Black all of "our undivided interest" in the subject land, and other lands. Ben Black and wife then purported to convey an undivided ⅔ interest in the

subject property to their daughter Julia Black by deed dated Dec. 21, 1922. Julia Black then reconveyed said purported interest to Ben Black by deed dated in 1925 and filed for record in 1930. By deed dated in 1936 Josie Black White and husband purportedly conveyed an undivided ⅓ interest in the subject land to Ben Black. This deed was only a few months prior to the mineral deed from Janie Lee and husband to G. T. Bartlett and Elmer Patman of date Mar. 31, 1937, with full warranty of title. Ben Black and wife Della Black died in 1946, intestate, leaving as their heirs Napoleon Black and other named heirs who are parties to this suit.

Napoleon Black and other Black heirs sought to prove a limitation title to the entire interest in the subject land and in their attempt to do so produced six witnesses. Three witnesses, Benny Willis, Ed Garner and Jodie Hilliard, were not Black heirs and did not claim any interest in the property. Their testimony was rather general and in our opinion was not sufficient to establish a limitation title in favor of Napoleon Black and the other Black heirs as against their cotenant Janie Lee, her heirs, successors and assigns.

The other three witnesses Napoleon Black, Julia Black Wilson and Will Black were children of Ben Black and are all appellants. Said witnesses were parties and interested witnesses. Their testimony has been carefully considered. Their testimony is rather general and contains certain conclusions on their part, particularly as to what they claimed and conclusions and testimony as to what their deceased father Ben Black did and the nature of his possession.

In 2 Tex.Jur.2d Sec. 223, it is stated: "Although the claimant's testimony that he has been in possession of the land under an adverse claim of ownership for more than ten years raises an issue of fact, *it is not conclusive because the claimant is an interested witness.* * * * and the conclusions of a witness to the effect that a named party was the owner of the land, had

fenced it, and acquired title by limitation are insufficient to show title by adverse possession.

We find no evidence of probative force in the record that any actual notice of repudiation of the cotenancy relationship was ever given or brought home to Janie Lee (or her heirs) by any of her cotenants. Also in our opinion constructive notice of repudiation of said cotenancy relationship was not established as a matter of law under the record in this cause.

■■■ The trial judge, the trier of the facts in this cause, was the judge of the credibility of the witnesses and of the weight to be given their testimony. He was not required to accept as conclusive the testimony of the three interested appellant witnesses. It is our view that the evidence in this cause certainly does not conclusively establish as a matter of law that appellant Black heirs had established a limitation title against their cotenant Janie Lee, her heirs, successors and assigns, under the record in this case. While there are many cotenancy cases which could be referred to here we think the Texas Supreme Court case of Todd v. Bruner, Tex., 365 S.W.2d 155 (1963), and the leading decisions cited therein, clearly enunciate the principles of law applicable in a cotenancy case such as the case at bar. The court after holding that there was no evidence of probative force to show actual notice of repudiation of the title of the co-tenants, stated in part as follows:

"We are also of the opinion that there is no support in the evidence for the finding that petitioners were charged with constructive notice of a repudiation of the cotenancy relationship. In Park v. Sweeten, Tex.Civ. App., 270 S.W.2d 687, affirmed by the Supreme Court under the style, Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794, it was pointed out that:

" 'The cases sustaining repudiation of tenancy by acts of unequivocal

notoriety as distinguished from actual notice of repudiation, generally rely upon long continued possession and user coupled with non-claimer on the part of the true owner.'

\* \* \* \* \* \*

"Insofar as the true owner of property is concerned, there is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession. It is not unusual for one cotenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants. Cotenancy is a common form of land tenure when owners belong to the same family. This results largely by the operation of the statute of descent and distribution and commonly followed customs and practices relating to the making of devises of lands. The legal presumption follows a generally recognized habit or practice based upon years of observed experience. The statutes of limitation are statutes of repose. They are intended to settle and support land titles and are not designed to afford a method whereby one member of a family may appropriate property belonging to his kinsman. Hence the legal requirement that notice of repudiation of the common title should be clear, unequivocal and unmistakable. In the present case, although the Edwin McNeese heirs lived in and about Round Rock, Texas, and the heirs of D. McNeese lived in San Antonio, Texas, no contention is made that the Round Rock McNeeses ever gave actual notice of their repudiation of the cotenancy relationship to the San Antonio McNeeses. \* \* \* The real property statutes of limitations as to cotenants are not designed to run in secrecy and silence. Brown v. Bickford, Tex.Civ. App., 237 S.W.2d 763, wr. ref. n. r. e. \* \* \*

"Any cotenant has a right to be in the possession of property in which he owns an interest, hence if the acts of the respondents and their predecessors in title are susceptible of explanation consistent with the existence of the common title then such acts cannot be such as to give constructive notice to the cotenants out of possession. Southern Pine Lumber Co. v. Hart, 161 Tex. 357, 340 S.W.2d 775, citing 4 Tiffany on Real Property (3rd ed.) 526, § 1185; 4 Thompson on Real Property (Perm. ed.) 405, §§ 1881 et seq.

"Possession, coupled with payment of taxes, is not notice to a cotenant of a repudiation of the common title. Stiles v. Hawkins, Tex.Com.App., 207 S.W. 89; Poenisch v. Quarnstrom, Tex.Sup. Ct., 361 S.W.2d 367.

"The cutting of timber is not in itself notice of repudiation of a cotenant's title, although it may give rise to a right for an accounting. Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.2d 638.

"In Killough v. Hinds, 161 Tex. 178, 338 S.W.2d 707, this Court said:

\* \* \* \* \* \*

" 'The rule is thus stated in Davis v. Lund, Tex.Com.App., 41 S.W.2d 57: When A enters upon the land in recognition of the title of B, in order for A to prevail under the 10-year statute of limitations three things must be established, (1) there must be a repudiation of the relationship thus established and claim of title adversely to that of B; (2) this repudiation and adverse claim must be clearly brought home to B as limitations will only begin to run from that date; (3) there must be adverse possession for 10 years after notice of repudiation and adverse claim has been brought home to B.'

"The authorities are in agreement upon the proposition that the law

point is the same in a cotenant case as it is in a landlord and tenant situation. In commenting upon Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794, it was said in the Texas Law Review that:

> " 'In Sweeten v. Park the Texas Supreme Court has set forth the doctrine which should become the basis of all future law in the area of adverse possession by tenants. Its soundness is attested by the fact that it is the rule in the majority of American jurisdictions. The policy of permitting a tenant to acquire a limitation title against his landlord by only ordinary acts of ownership may have been suited to a frontier society in which land titles were relatively unstable at best. It loses its validity, however, in a settled society in which stability is achieved largely through registration of deeds and other written documents. For the protection both of the landlord under whom the tenant enters and of persons who may later purchase from him, it is essential that the acquisition of title by a tenant be made dependent upon clear and unequivocal notice of his repudiation of the tenancy and his intention to claim the land for himself.' Betty Jo Wiest Christian, "Adverse Possession by Tenants in Texas," 38 Tex. Law Review 320."

■ The burden of proof was upon appellant Black heirs to establish their limitation title as against their cotenant Janie Lee's ½ interest (and her heirs, successors and assigns). This they failed to do to the satisfaction of the trial judge who heard the evidence. We hold that the trial court's findings in this respect were warranted by the record in this cause.

■ Also, after carefully considering and reviewing the entire record in this cause in the light of the rules announced in the case of In Re: King's Estate, 150 Tex. 662, 244 S.W.2d 660, we further hold

that the trial court's findings to the effect that appellant Black heirs failed to establish a limitation title against Janie Lee's ½ undivided interest in the subject property (and her heirs, successors and assigns), were not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

All points of appellant Napoleon Black and other appellant Black heirs, relating to their appeal with respect to controversy 1, are overruled.

The judgment of the trial court insofar as it disposes of controversy 1 is affirmed.

### CONTROVERSY 2

On March 31, 1937, Janie Robinson Lee and husband, Charlie Lee, executed a mineral deed to G. T. Bartlett and Elmer Patman, which was regular in form and contained a full warranty. The granting clause stated:

> "Do Grant, Sell, Convey, Assign and Deliver unto the said Grantee, an undivided one-half (½) interest in and to all the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Cass County, Texas, to-wit:"

Following the description of the subject land in controversy the following language appears:

> "It being intention of grantors herein to convey one-half of the minerals out of the interest owned by them in above-described tract of land."

Appellants Wesson Bartlett and Mrs. G. T. Bartlett were the sole surviving heirs at law of G. T. Bartlett, deceased. The Bartletts in 1952 executed an oil and gas lease in favor of Grant, Lessee; Sinclair, in 1959, acquired an interest in said lease as shown by assignment from Eastland, an assignee of Grant.

The trial court found to the effect that the mineral deed in question conveyed ½

of Janie Lee's ½ interest, same being a ¼th interest in the whole. We do not agree.

In Minchen v. Hirsch, Tex.Civ.App., 295 S.W.2d 529, wr. ref., n. r. e. (1956) the court had before it for construction the following language in a deed, to-wit:

"   *   *   *   it is our intention to convey unto the said S. Minchen, his heirs and assigns, free and clear of all claims, liens and encumbrances, a perpetual one-sixteenth (⅟₁₆th) fee mineral royalty/*out of our interest therein*." (Emphasis added.)

The grantors of said Minchen deed, prior to and at the time of execution of said deed, owned an undivided ¼th interest. The trial court held that the joint effect of the clauses in the deed, including the language in the clause quoted above, conveyed a ⅟₆₄th fee mineral royalty, same being ⅟₁₆th of said ¼th interest.

Minchen, on appeal, contended that the deed conveyed to him not a ⅟₆₄th but a ⅟₁₆th mineral royalty interest. The Court of Civil Appeals sustained Minchen's contention and reversed and rendered the judgment of the trial court as to this issue. We quote from the court's opinion in the Minchen case, supra, in part as follows:

"The real bone of contention in this lawsuit is the construction of the royalty deed from Bryan to Minchen. The original of this instrument was in evidence and has been brought up in the record on appeal in this case. The interest conveyed thereby is referred to in the deed in three places, first in the granting clause:

"   'Have Granted, Bargained, Sold and Conveyed, and by these presents do hereby grant, bargain, sell and convey, unto the said S. Minchen, of Harris County, Texas, a one-sixteenth (⅟₁₆th) fee mineral royalty of our one-fourth (¼th) interest in, on, or under the following described lands and premises, situated in Brazoria County,'

second in the habendum clause,

"   'To Have and To Hold the above described one-sixteenth (⅟₁₆th) fee perpetual mineral royalty in, on, or under our undivided one-fourth (¼th) interest,'

and last in a clause which states the express intention of the grantor,

"   '*   *   *   it is our intention to convey unto the said S. Minchen, his heirs and assigns, free and clear of all claims, liens and encumbrances, a perpetual one-sixteenth (⅟₁₆th) fee mineral royalty/*out* of our interest therein.'

"It is noted that in the final clause stating the intention of the grantor, the grantor has written in the word 'out' in his own handwriting before the words 'of our interest therein' and has written to one side 'ok DFB.'

"The trial court held that the joint effect of these three clauses was to convey to Minchen a ⅟₆₄th fee mineral royalty in the land in suit. All of the parties, those contending that the trial court's construction of the instrument was correct and Minchen, who contends that the instrument conveyed a ⅟₁₆th royalty interest to him, have filed able and extensive briefs on this question.

"The granting clause of the mineral deed refers to a 'one-sixteenth (⅟₁₆th) fee mineral royalty of our one-fourth (¼th) interest.' Minchen concedes that under the law of Texas this statement, if followed by no statement showing contrary intent, did grant an undivided ⅟₆₄th royalty interest. The habendum clause, however, refers to a 'one sixteenth (⅟₁₆th) fee perpetual mineral royalty in, on or under our undivided one-fourth (¼th) interest.' This clause, as we view it, is equivocal. It can be harmonized with the granting clause or it can be harmonized with the latter clause respecting the intent

of the grantor. The clause stating the intent of the grantor recites that 'it is our intention to convey unto the said S. Minchen, his heirs and assigns, free and clear of all claims, liens and encumbrances, a perpetual one-sixteenth (⅟₁₆th) royalty out of our interest therein.' The word 'out' is written with pen and ink into this sentence by the grantor. *We think the clear meaning of this clause is that it was the intention of the grantor to convey to Minchen an undivided one-sixteenth (⅟₁₆th) royalty interest in the land.* This clause cannot be reconciled with the granting clause. It appears that the ambiguous wording of the habendum clause was noticed by the grantor and that he added the entire paragraph in the deed which stated his intention to be to grant to the grantee a perpetual ⅟₁₆th fee mineral royalty out of his interest. *The phrase 'out of' clearly indicates only the source from which the one-sixteenth (⅟₁₆th) interest was to be taken.* In construing a deed or other instrument of conveyance some meaning should be given to every word in the written instrument, if it can reasonably be done and if it is not inconsistent with the general intent of the whole instrument, so that the deed may operate, as by law, it may, according to the intention of the parties. Edwards v. Edwards, Tex.Civ.App., 52 S. W.2d 657. That construction which is most consistent with the intention of the grantor, as gathered from the terms of the conveyance, is accepted as the true one. Technical rules of construction are not favored and must not be applied so as to defeat the intention. Barkley v. Gibbs, Tex.Com.App., 242 S.W. 462.

\* \* \* \* \* \*

"We think, also, that the well settled rule of law that where handwritten and printed or typewritten matters in an instrument are inconsistent, the handwritten part will prevail, is in support of appellant Minchen's contention that the handwritten word 'out' in the clause of intention serves to show the intent of the grantor to be to convey an undivided one-sixteenth (⅟₁₆th) mineral interest. *Without the addition of the word 'out' written in by the grantor the statement of intent would have read that he intended to grant a one-sixteenth (⅟₁₆th) of his interest. With the addition of that word it clearly stated his intent to be to grant a one-sixteenth (⅟₁₆th) out of his interest.*

\* \* \* \* \* \*

"That portion of the trial court's judgment which is based upon the holding that the Bryan to Minchen conveyance conveyed only a ⅟₆₄th mineral royalty interest is reversed and judgment is rendered in accordance with our holding that such instrument conveyed a ⅟₁₆th royalty interest in and under the tract of land in question. \* \* \*" (Emphasis added.)

In 6 Oil & Gas Reporter, 1372, there is this comment by W. D. Masterson, Jr., in the discussion notes following the Minchen case reported therein:

"Much of the difficulty encountered in mistaken attempts to define a mineral or royalty interest is caused by a failure to realize that 'of' is the same as 'times' in a multiplication formula. Thus, ⅟₁₆ of ¼ equals ⅟₆₄. On the other hand, conveyance of a ⅟₁₆ royalty interest payable out of grantor's ¼ mineral interest, vests in the grantee a free ⅟₁₆ of gross production, the reference to the ¼ being simply a reference to the source of payment. Thus the phrase 'out of' was very important in the principal case. \* \* \*"

In commenting on the Minchen case, it is stated in Williams and Meyers, 1 Oil and Gas Law 655, Sec. 319, that "The position adopted by the court appears to be a tenable construction of the phrase 'out of' \* \* \*"

In Williams and Meyers, 1 Oil and Gas Law 654, Sec. 319, "Case 21A" is discussed:

"R executes a general warranty deed to E as follows: 'Convey * * * an undivided one-fourth interest *out* of our one-half interest in the minerals in the following described land:' ", etc.

The authors state, "Thus, in Case 21A, E receives a ¼ mineral interest, not ¼ of ½ or a ⅛ mineral interest."

The granting clause in the 1937 mineral deed in question here is unambiguous and clearly conveys an undivided ½ mineral interest in the subject land. The intent clause in said instrument is likewise unambiguous, clearly conveys an undivided ½ mineral interest in the subject land, and the phrase "out of" in the intent clause refers to the source of the title out of which the ½ mineral interest was to be taken and did not operate to reduce the amount of the mineral interest acquired by the grantees.

▮ We hold that the trial court erred in its construction of the said 1937 mineral deed. We hold that said mineral deed is unambiguous and conveyed an undivided ½ interest in the minerals in the subject land and served to convey to the grantees all of the undivided ½ mineral interest owned by Janie Lee in said land.

▮ We further hold that the trial court erred in finding to the effect that at the time of the 1937 mineral deed in question, G. T. Bartlett and Elmer Patman, grantees therein, intended to acquire only a total of a ¼th mineral interest in the subject land. Over the objections of appellants the trial court erroneously admitted in evidence various extraneous instruments of Patman and the Bartletts, constituting admissions against their interests. The mineral deed in question being unambiguous, any intention as to what the grantors conveyed or the grantees received must be confined solely to the deed itself. Gibson v. Watson, Tex.Civ.App., 315 S.W.2d 48, wr. ref., n. r. e. (1958); Fox v. Lewis,

Tex.Civ.App., 344 S.W.2d 731, wr. ref., n. r. e. (1961); 23 Tex.Jur.2d 523.

It is stated in 19 Tex.Jur.2d 394, Sec. 107:

"In ascertaining the intent of the grantor in a deed, it is not the function of the court to attempt to ascertain what he meant to say, but only the meaning of what he did say. The intention as expressed in the deed must be given effect, regardless of the intention that the parties had intended to express but that they failed to express. If there is no ambiguity in deed, the instrument will be enforced as written, even though it does not express the original intention of the parties."

It must be borne in mind that the Lee-Moore defendants-appellees had no pleadings seeking reformation of the mineral deed in question for fraud, accident or mistake. In this connection see 23 Tex.Jur.2d 500, Sec. 342, wherein it is stated in part as follows:

"As a general rule, in the absence of fraud, accident, or mistake, extrinsic evidence is inadmissible to vary, add to, or contradict the terms of a valid written instrument that on its face is complete and unambiguous. In other words, unless a writing on its face rebuts in some manner the presumption that it is complete, inconsistent extrinsic evidence, *either oral or written,* is inadmissible to vary or add to the terms of the instrument. For example, if a written contract is complete on its face and there are no allegations of fraud, accident, or mistake, parol evidence is not admissible to show that the terms and legal effect of the agreement are not in accordance with the prior understanding of the parties. In brief, the extrinsic evidence rule ordinarily requires the exclusion of parol evidence of prior or contemporaneous negotiations, conversations, representations, or statements that would

add to or vary the terms of written agreements that are clear on their face. *The rule also prohibits the varying of written contracts by an agreed statement of facts. * * *"* (Emphasis added.)

■ The trial court also erred in admitting in evidence, over the objections of appellants, an oil and gas lease from Janie Lee and husband to G. T. Bartlett and Elmer Patman of date, March 31, 1937, covering the subject land. The trial court admitted the lease on the basis of estoppel only. It should not have been admitted on that basis or any other basis. The mineral deed in question was complete on its face as to the mineral interest conveyed, and since it was unambiguous, the lease and testimony with respect thereto should have been excluded. Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977 (1941); 23 Tex.Jur.2d 500, Sec. 342.

■ It has also been held that where all of a grantor's interest has passed by an unambiguous deed, the later acts of the grantee tending to prove a construction of the deed against his interest or recognition of rights in others will not impair the title vested in the grantee. Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81 (1942); 19 Tex.Jur.2d Deeds, Sections 154 and 167.

The trial court also erred in finding and holding to the effect that Bartlett and Patman, and their successors in interest, were estopped to assert that G. T. Bartlett and Elmer Patman acquired by the mineral deed in question more than a ⅛th mineral interest each (aggregating a ¼th interest); that they acted on such basis; and, that they admitted said deed conveyed to them only a ¼th mineral interest or only a ⅛th interest to each of them.

The extrinsic instruments offered in evidence by defendants-appellees Lee-Moore, et al, have been examined and are found to be immaterial as to any question of estoppel as all of the requisite elements of estoppel as set forth in Alcoa Oil & Gas Corporation v. Concord Oil Company, Tex.Civ.App., 375 S.W.2d 463, affirmed in Tex., 387 S.W.2d 635 (1965), are not shown in this case.

■ Defendants Lee-Moore et al did not prove all of the components of estoppel. There is no proof that they were misled to their injury by the execution of any of the instruments by Elmer Patman or the Bartletts to other persons to which instruments they or Janie Lee were not even parties. Furthermore, the acts and declarations of G. T. Bartlett's successors and of Elmer Patman were immaterial as to defendants Lee-Moore et al, since the 1937 mineral deed was unambiguous and conveyed away all of the mineral interest of Janie Lee. Bruni v. Vidaurri, supra; 24 Tex.Jur.2d 231, Sec. 643; 19 Tex.Jur.2d 518, Sec. 191.

■ Sinclair, who deraigns its leasehold title from the successors of G. T. Bartlett, was also certainly not estopped or bound by any acts or declarations of the other grantee Patman, inasmuch as Bartlett or his successors, including Sinclair, were not in privity with Patman or his successors, and Sinclair also certainly was not estopped or bound by any acts, declarations or answers to requests for admissions by Mrs. G. T. Bartlett and Wesson Bartlett, after the 1952 lease from Mrs. G. T. Bartlett and Wesson Bartlett to Grant had been executed and delivered. Also Elmer Patman was not estopped or bound by any acts, declarations or answers to requests for admissions made by Mrs. G. T. Bartlett and Wesson Bartlett.

■ Admissions 7 and 8 of Wesson Bartlett and Mrs. G. T. Bartlett, to the effect that the 1937 mineral deed in question conveyed an undivided ¼th interest to G. T. Bartlett and Elmer Patman were not admissions of fact but were admissions of law. These admissions of law should not have been considered by the court as against Wesson Bartlett, Mrs. G. T. Bartlett or anyone. See Gore v. Cunningham, Tex.Civ. App., 297 S.W.2d 287, wr. ref., n.r.e. (1956) wherein it was stated to the effect that the purpose of Rule 169, Texas Rules of Civil Procedure, was "to eliminate in advance of

the trial fact issues which would not be in dispute, and that the rule does not contemplate or authorize admissions to questions involving points of law." The other admissions made by Wesson Bartlett and Mrs. G. T. Bartlett have been examined and none of them are deemed to be operative to divest them of their title to their interest in the subject property.

If the 1937 mineral deed was in truth and fact not correctly drawn and was intended to convey only a 1/4th interest instead of the 1/2 interest it clearly conveyed by its language, then Janie Lee or her heirs and successors in title, by seasonably filing suit for reformation with appropriate allegations of fraud, accident or mistake could have sought to reform the mineral deed, which suit would have been subject to such defenses, if any, as might be available to the grantees and their successors in title. However we do not have a problem here of whether the mineral deed should be reformed as no suit for reformation was brought.

We do not believe that the unambiguous 1937 mineral deed in question can be reformed by construction or by alleged but unproven estoppel or by the admissions against interest as shown under the record in this cause. In this connection, see 19 Tex.Jur.2d 406, Sec. 113, wherein it was stated in part as follows: "The court may not, however, in order to harmonize conflicting clauses in a deed import words into the deed in such a manner as to amount to a reformation thereof by construction. *A construction of this character would be violative of the statute of frauds."* (Emphasis added.)

With respect to controversy 2, the judgment of the trial court which holds to the effect that Janie Lee and husband by the 1937 mineral deed conveyed to G. T. Bartlett and Elmer Patman only an undivided 1/8th mineral interest to each of them (aggregating a 1/4th interest is reversed and remanded with instructions to enter judgment as hereinafter outlined.

The judgment of the trial court as to controversy 1 is affirmed. The portions of the judgment of the trial court which were not appealed from are not disturbed. The judgment of the trial court as to controversy 2 is reversed, and is remanded with instructions to enter an appropriate judgment decreeing title in the successors and assigns of G. T. Bartlett, (in their appropriate portions) to an undivided one-fourth mineral interest in the land in litigation, and decreeing title in Elmer Patman and his successors and assigns, (in their appropriate portions) to an undivided one-fourth mineral interest in the land in litigation, subject to the oil and gas leasehold interests owned by Shell, Cities Service and Sinclair in the proportions that they are validly owned by said parties, and the court should also adjudge that any proceeds of production attributable to the subject land, or any part thereof included in a unit, should be distributed on the basis of ownership as above found, and the court is directed to revise its judgment in the cause, so as to make same to be in conformity with all the rulings and holdings herein made.

Affirmed in part, reversed in part, and remanded with instructions to enter an appropriate judgment in conformity with the rulings and holdings herein made.